POLLOCK BARBOUR *et al.*

*v.*

HAMILTON WHITE *et al.*

1. CHATTEL MORTGAGE — *rights of assignee.* The assignee of a chattel mortgage may, upon condition broken, maintain an action of replevin for the recovery of the mortgaged property.

2. SAME. Where a chattel mortgage provided that on the happening of certain contingencies, the notes secured by it, though not due by their terms, should become due and payable, and the mortgagee *may elect* to take possession of the mortgaged property, he is not compelled to take possession in order to preserve his lien, but has the election either to treat the notes as due, or let them stand on their original terms, as he may desire.

3. SAME. When several notes, maturing at different dates, are secured by a chattel mortgage, and the conditions of the mortgage are broken on default in payment of any one of the notes, it is nevertheless optional with the mortgagee to take possession on the first default, or to await the maturity of the last note.

4. SAME. Although the assignee of a mortgage takes it subject to all equities between the original parties, he does not take subject to the latent equities of third persons of which he had no notice.

5. INSTRUCTIONS — *as to reasonable diligence.* When the court instructs a jury that the mortgagee in a chattel mortgage must take possession in a reasonable time, it should also inform the jury what facts, in reference to the case on trial, would constitute reasonable diligence.

6. WRIT — *levy.* Where the furniture of a hotel is to be levied on, an officer is to be considered as having made the levy from the time he places a deputy or agent in possession.

7. CHATTEL MORTGAGE — *diligence by mortgagee.* Where notes, payable in the city of New York, are secured by a chattel mortgage on property in Chicago, the agent of the mortgagee in Chicago would have until the next day after being advised of non-payment in due course of mail, to sue out a writ of replevin, provided the advice of non-payment is sent by mail without delay on the part of the person sending. In such cases it is not necessary to resort to the telegraph in order to constitute diligence.

8. PRACTICE. It is error to render final judgment against a part of the defendants, without disposing of the case as to the others.

9. SAME. It is error to enter the default of a defendant after the death of a sole plaintiff, and before his representative had been made a party.

WRIT OF ERROR to the Superior Court of Chicago, Hon. GRANT GOODRICH, Judge, presiding.

This was an action of replevin commenced at the February term, 1859, by Horace White against the plaintiffs in error, to recover certain personal property claimed by him under a chattel mortgage. He died pending the suit and the defendants in error were made parties plaintiff as his executors. They recovered a verdict and judgment and the defendants below sued out a writ of error. The facts, so far as they are material to the points decided, are stated in the opinion of the court.

Messrs. D. C. & I. J. NICHOLS for plaintiff in error.

Mr. E. W. EVANS for defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

In May, 1858, one Beers bought of Maher, one of the appellants, the furniture of a hotel in Chicago, known as the Adams House, paying him therefor $15,000 in liquors, and $5,000 in cash. At the same time he leased the hotel from Maher for a term of ten years, the rent payable monthly at the rate of one thousand dollars per month. The liquors at

that time belonged to the firm of A. P. Kenyon & Co., and said sum of $5,000 was borrowed of one Horace White, now deceased, then a banker in Syracuse, New York, on the credit of one William Walter, one of the members of said firm. Beers, at the time of leasing the hotel, gave his four promissory notes to Walter for $5,000 each, maturing at two, four, six and eight months from date, and to secure their payment, also executed to Walter a mortgage upon the furniture in the hotel. Whether Beers, in this transaction with Maher, was dealing for himself, and had in good faith bought the liquors and borrowed the money, or whether he was really acting merely as the agent of Kenyon & Co., and allowing his name to be used to cover up their property, are questions in regard to which the evidence is contradictory, and as the case is to go before another jury it would be improper in us to express an opinion. Soon after the execution of the notes and mortgage from Beers to Walter, the latter assigned them to Horace White, of whom he had borrowed the money. In September, Beers sold his lease and the furniture to William L. Walter, a son of said William Walter, and gave him possession. The last note to Beers fell due on the 29th of January, 1859, and nothing having been paid on any of them, White, on the 2d of February, sued out a writ of replevin and replevied the furniture. The action was brought against William L. Walter as the tenant in possession, and also against various other persons supposed to claim an interest in the property. On the trial the plaintiff claimed through the mortgage from Beers to Walter, and the defendants Maher and Barbour claimed title under a mortgage executed on the 24th of August 1858, from Beers to Maher, purporting to be given to secure a note for $10,000, and also whatever rents might be due or accrue upon the hotel, which mortgage was subsequently assigned by Maher to Barbour. Horace White died pending the suit and it was revived and prosecuted in. the name of his executors. They recovered a judgment, and the defendants motion for a new trial having been overruled, they bring the case to this court.

It is urged by the plaintiffs in error, that Horace White, claiming merely as assignee of the mortgage, could not maintain this action, and reference is made to *Olds* v. *Cummings*, 31 Ills., 191. The point of that decision was that the assignee of a mortgage takes it subject to all the equities existing between the original parties. The court say in the opinion, " the assignee of a mortgage has no remedy upon it by law, except it be treated as an absolute conveyance, and the mortgagee convey the premises to the assignee by deed; and upon the question whether this can be done, the authorities are conflicting." The court is here speaking of mortgages upon real estate. In the case before us the mortgagee not only assigned the notes to White, but also made a formal transfer to him of the mortgage and of the property described in it. This passed the legal title to this personal property as fully as the title to realty would pass by a conveyance under seal, by the mortgage, and as the ordinary remedy on mortgages of personalty is at law, for the purpose of reducing the property to possession and selling it for the debt, we can perceive no reason why the proceeding may not be had in the name of the assignee.

It is further urged by the plaintiffs in error, that the holder of the Walter mortgage lost its priority over that to Maher, by failing to take possession when the first note fell due and remained unpaid. The provision in the mortgage was as follows:

And provided, also, That it shall be lawful for the said Lewis P. Beers, his heirs, executors and administrators to retain possession of the said granted property, and at his own expense to keep, use and enjoy the same until Lewis P. Beers or his heirs, executors, administrators or assigns shall make default in the payment of the said sums of money above specified, either in principal or interest, at the time or times and in the manner hereinbefore contained: *or unless* the said William Walter or his assigns shall fear diminution, removal or waste for want of proper care, or if the said party of the

first part shall sell or assign, or attempt to sell or assign, said goods and chattels, or any part thereof, or if any writ issued from any court shall be levied on any part of the above described goods and chattels, that then, and in any of the aforesaid cases, all of said notes, both principal and interest, shall become due and payable; and the said party of the second part, his heirs, executors, administrators and assigns, agents or attorneys, or any of them, may elect thereupon to take possession of the said property, etc.

By this clause it is, in substance, provided that on the happening of any one of certain contingencies, all the notes, though not due by their terms, shall become due and payable, and the mortgagee *may elect* to take possession of the mortgaged property. We are of opinion that the reasonable construction of this provision, when taken in all its parts, is, not that the notes shall become absolutely due, and the mortgagee compelled to take possession, in order to preserve his lien, but that he has the election to treat the notes as due, and take possession, or let them stand upon their original terms, as he may desire. The clause is, so far as the mortgagor is concerned, in the nature of a forfeiture, and to hold that the mortgagee must declare the forfeiture or lose his security, would be an extremely harsh rule for the debtor, and an onerous one for the creditor. For the same rule applies to all the contingencies mentioned in the mortgage, and if the construction claimed by the plaintiffs in error were adopted, it would be necessary for the mortgagee to keep a daily watch upon the property in order to be advised of the occurrence of the contingency. The clause was inserted in the mortgage merely to give the mortgagee additional security, and if he does not deem it necessary to avail himself of his privilege of claiming payment of his notes sooner than they are due by their face, no other person is injured or has a right to complain.

Neither can we hold, as insisted by counsel for plaintiffs in error, that, irrespective of this clause, the mortgagee was

bound to take possession as soon as default was made in the payment of the first note, or of the interest. It was optional with him to do so, or to let the mortgage stand until the last note matured. The contrary rule would greatly impair the value of chattel mortgages as a security, as, if the mortgagee were required to take possession and sell on default in the payment of the first instalment, he would lose the benefit of his security for the subsequent instalments in all cases where the property was incapable of division, and the mortgage failed to provide that the entire debt should become due on default in the payment of any part. The rights of all parties will be best guarded by requiring of subsequent incumbrancers to act upon the knowledge that the elder mortgagee has the right to delay action until the entire debt secured by the mortgage falls due, provided it falls due within the statutory limitation.

On the trial in the court below, the plaintiffs in error asked certain instructions to the effect, substantially, that if the mortgage from Beers to Walter was designed to defraud Maher, it was void as against him, though assigned with the notes, to White before it fell due, and irrespective of the question whether White had notice of the intended fraud. The case of *Olds* v. *Cummings*, 31 Ills., 191 is cited in support of that position. But that case only decides that the assignee of a mortgage takes subject to the equities between the parties thereto, and pointedly discriminates between such case and one where the equities of third persons are sought to be interposed. This point did not come up for decision. We have no hesitation, however, in adopting the rule laid down by Chancellor KENT in *Murray* v. *Silburn*, 2 J. C. R., 441, and for the reason given by him, that " the assignee can always go to the debtor and ascertain what claims he may have against the bond, or other *chose in action*, which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee."

The same rule is held in *Mott* v. *Clark*, 9 Pa. State Rep.,
399, and in *Prior* v. *Wood*, 31 Ib., 147. These instructions
were properly refused.

One of the points in controversy on the trial was, whether
the plaintiff used sufficient diligence in taking possession of
the property after the maturity of the last note, and on that
question the court gave for the plaintiff the following
instructions :

3.   The law requires the plaintiff to take possession of the
property in question within a reasonable time after the fourth
note matured, and what was a reasonable time, depends upon
the circumstances of each case, and all the law demands of
the plaintiff is that there shall be reasonable exertion, and no
unreasonable delay in asserting his rights to the possession of
the property after the mortgage became due.

4.   " That no general rule can be laid down as to what
would be a reasonable time; in general what would be a
reasonable time must be determined by the situation of the
parties, character, and situation and amount of property,
etc.," and that the question of time and reasonable exertion
in taking possession is to be decided by the Jury under all the
facts in the case.

It is objected that these instructions leave wholly to the
jury to determine what is reasonable diligence, without any
information as to what the law means by that phrase, as ap-
plied to a case like the present. The exception is well taken.
Although the instructions declare a correct legal principle,
they might easily lead a jury astray. If unaware that the
law requires a mortgagee to take immediate possession after
forfeiture, the jury might suppose, under these instructions,
that a week or ten days would be no unreasonable delay. We
might say, since the instructions are correct, as abstract pro-
positions, if the defendants desired the law to be more spe-
cifically laid down, they should have asked an instruction as

to what amounted to reasonable diligence, but it appears when they asked their seventh instruction, to the effect that if Beers remained in possession after maturity of the mortgage, such possession was fraudulent as to Maher, the court qualified the instruction by adding the same general language employed in the plaintiffs' instructions. As the case must, in any event, be reversed on another ground, the court below, at the next trial, should qualify the plaintiffs' third and fourth instructions by explaining to the jury what, in this case, reasonable diligence would be. As the notes were payable at the Metropolitan bank in the city of New York, the plaintiffs' agent in Chicago was under no obligation to sue out the writ of replevin until he could be advised of non-payment in the course of mail, without delay on the part of the person sending the information. We are not disposed to hold that the telegraph must be resorted to in a case of this character, as a means of communication, in order to constitute diligence. The agent would have until the next day after receiving his advices to sue out the writ and replevy the property. Here the furniture of a large hotel had to be scheduled before the officer could remove the property, but he is to be considered as having levied his writ from the time he placed a deputy or agent in possession. These circumstances, if they existed, would establish reasonable diligence, and if there was any longer delay in taking possession it must be shown to have been unavoidable. *Cass* v. *Perkins*, 23 Ill., 384.

There are two technical errors in the record which are fatal to the judgment. The defendant William L. Walter was served with process, but no judgment was rendered for or against him. It is error to render final judgment against a part of the defendants, without disposing of the case as to the others. *Dow* v. *Rattle*, 12 Ills., 373.

The other error was in entering the default of the defendant Kenyon after the death of the plaintiff had been suggested on the record and before his executors had been made parties. Kenyon afterwards moved to set the default aside and

the motion was overruled. This was error. No valid proceedings can be had in any case after the death of a sole plaintiff, until his representatives have been made parties. *Risley* v. *Fellows*, 5 Gilm., 533.

It is urged by the defendants in error that these objections are raised for the first time in this court. We cannot, for that reason, refuse to consider them. They are not proceedings of a character to make an exception necessary in the court below. The errors appear on the record and can be assigned here. One of them goes in substance to the jurisdiction. It is no more necessary to take an exception to erroneous proceedings of this character than to an erroneous judgment on a demurrer.

*Judgment reversed.*