JOHN V. HANDLEY *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* UNARCO INDUSTRIES, INC., *et al.*, Defendants (Owens-Corning Fiberglas Corporation, Defendant-Appellee and Cross-Appellant; North American Asbestos Corporation, Defendant-Appellee).

Fourth District No. 4—82—0380

Opinion filed May 9, 1984.

James Walker, Ltd., of Bloomington, for appellants.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde, of counsel), for appellee North American Asbestos Corp.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Crisham, Frederick S. Mueller, and Joanna C. New, of counsel), for appellee Owens-Corning Fiberglas Corp.

JUSTICE TRAPP delivered the opinion of the court:

The issue is whether a default judgment against one group of tortfeasors in one action bars a separate action against another group of tortfeasors who were originally joined in the first action but later were dismissed without prejudice where all of the tortfeasors are al-

leged to be jointly and severally liable for plaintiffs' injuries caused by exposure to asbestos. In the cross-appeal we consider whether suits alleging intentional torts against employers, whose business involves the use of asbestos material, are barred by the exclusive remedy provisions of the Workers' Occupational Diseases Act. (Ill. Rev. Stat. 1981, ch. 48, pars. 172.40, 172.46.) We reverse the order of summary judgment in the direct appeal, affirm the denial of defendants' motion to dismiss in the cross-appeal, and deny both motions which we have taken with the case.

On May 19, 1980, plaintiffs, John Handley *et al.*, brought suit in the circuit court of McLean County (80-L-93) against defendants Owens-Corning Fiberglas Corporation and North American Asbestos Corporation, and other defendants not parties to this appeal, seeking compensatory and punitive damages for injuries they or their decedents received as a result of exposure to asbestos while employed by Unarco Industries and its successor, Owens-Corning Fiberglas Corporation, at a plant in Bloomington, Illinois. The defendants named in the action were the employers, suppliers, and distributors of asbestos products. Plaintiffs' complaint pleaded various theories of recovery and sought to hold the defendants jointly and severally liable on individual claims and claims brought on behalf of deceased employees' estates.

Prior to bringing suit in case No. 80-L-93, on December 29, 1978, Delora Stewart, individually, and on behalf of all others similarly situated, sued all of the same defendants in this appeal in case No. 78-L-201, also seeking to hold the defendants jointly and severally liable for injuries received by plaintiffs, and others similarly situated, from exposure to asbestos at the Bloomington plant. Also on December 29, 1978, Delora Stewart, Vernadine Thacker and Betty Redman, individually, and as representatives of their decedent's estates, as well as on behalf of all others similarly situated, brought suit in case No. 78-L-202 against the defendants in this appeal. Again, the complaint pleaded various theories of recovery and sought to hold the defendants jointly and severally liable for damages under the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, par. 1), the Survival Act (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6), and under section 15 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1981, ch. 40, par. 1015). All of the plaintiffs in these last two suits are plaintiffs in the instant cause No. 80-L-93.

A number of the defendants were served with process in Nos. 78-L-201 and 78-L-202 but did not appear, and on June 19, 1979, an order of default was entered, on plaintiffs' motion, against Cape Indus-

tries, Ltd., EGNEP, Ltd., and Cape Asbestos Fibers, Ltd. (Cape group), in Nos. 78-L-201 and 78-L-202 on behalf of the named plaintiffs in those suits and all others similarly situated. Shortly after the default order had been entered, plaintiffs in Nos. 78-L-201 and 78-L-202 dismissed without prejudice defendants North American Asbestos Corporation, Owens-Corning Fiberglas Corporation, and other defendants not parties to this appeal. Causes Nos. 78-L-201 and 78-L-202 then proceeded to trial on damages against the Cape group which had been defaulted; all of the plaintiffs in this suit (80-L-93) participated in the trial on damages; and a judgment was entered in favor of the named plaintiffs in this suit against the defaulters, assessing specific amounts of damages for individual claims and claims brought on behalf of the decedents' estates. Most of the plaintiffs who appeared at the damage trial were neither named plaintiffs in Nos. 78-L-201 and 78-L-202 nor were they members of any certified class, although all of them were represented by the same counsel.

Because plaintiffs had taken default judgments and participated in the trial on damages, defendants North American Asbestos Corporation and Owens-Corning Fiberglas Corporation, among others, moved for summary judgment in this case. The trial court had granted a similar motion for summary judgment in a companion case and granted these summary judgment motions adopting the defendants' reasoning. Defendants argued that the plaintiffs could not bring several lawsuits against the same defendants seeking recovery on a theory of joint and several liability—proceeding to trial and obtaining judgments against those defendants who defaulted, and thereafter pursuing a separate judgment in a separate lawsuit against other defendants who had been voluntarily dismissed without prejudice from the first suit—when all suits alleged an indivisible injury to plaintiffs and sought to hold the defendants jointly and severally liable. The trial court reasoned that a plaintiff who seeks recovery in a single case against multiple defendants who are alleged to be jointly and severally liable for a wrong may default any defendant who does not answer but should not prove up damages against the defaulted defendant until liability has been established as to all defendants. The trial court held that if plaintiffs choose to prove up damages and obtain a money judgment against defaulted defendants, plaintiffs could not then seek a money judgment against other alleged joint tortfeasors who were named in the original action. The court stated that Illinois law was old on this issue but suggested that taking of a judgment against one joint tortfeasor in a case where several are sued operates to discontinue the suit as to all the other defendants. To permit otherwise, the trial

court reasoned, would be to permit several judgments rather than a single judgment for the whole of the injury to the plaintiff. The trial court found persuasive the reasoning of *In re Uranium Antitrust Litigation* (7th Cir. 1980), 617 F.2d 1248, which sets forth the procedure to be followed in a case where multiple defendants are sued on a theory of joint and several liability and some default. The trial court concluded that "[t]he Plaintiff alleged a single, unified 'damage' on a number of theories of liability against a number of Defendants. The Plaintiff then elected to proceed against [the defaulters] and obtained a default money judgment against them. In so doing, Plaintiff abandoned, as a matter of law, her claims against the other alleged joint tortfeasors."

▮ Both in the trial court and on appeal, defendants cite various authorities for the rule that a plaintiff cannot continue a cause of action as to a joint and several tortfeasor when he has already received a money judgment against another tortfeasor in the same suit, most notably *Davis v. Taylor* (1866), 41 Ill. 405. Defendants argue that once plaintiffs recovered a money judgment against the defaulted Cape group in Nos. 78-L-201 and 78-L-202 they were barred from maintaining an action against them since the lawsuits alleged that all defendants were jointly and severally liable for plaintiffs' injuries. We do not take issue with the *Davis* rule as stated by the defendants, but we find it inapplicable here and accordingly reverse the order of summary judgment and remand for further proceedings.

We begin first with the principal authority relied upon by the defendants, the case of *Davis*. In *Davis*, Taylor brought an action *in trover* against three defendants to recover damages for the value of personal property which was allegedly taken by the defendants. Taylor recovered a verdict and judgment was rendered in his favor against all of the defendants except Sarah Young who had been served with process but not included in the judgment. On appeal, the defendants argue that under the common law "unit judgment rule" which required the trial court to enter one judgment disposing of the claims against all of the defendants, the court erred in entering judgment against the defendants without including defendant Young in the judgment. The supreme court disagreed and stated:

"It is also urged, that Sarah B. Young was served with process, and that no judgment was rendered against her. It was held, in *Dow v. Rattle*, 12 Ill., 373, which was an action of assumpsit, to be error to render final judgment against part of the defendants, without disposing of the case as to the others. On the authority of this case, the same thing was said in an

action of replevin in the case of *Barbour v. White*, 37 Ill., 164. There were, however, other grounds for reversing the last named case, and, on further considering this point, we are of opinion, that the rule should not be applied to actions of tort. There is no reason for thus applying it, because there is no contribution among wrong-doers. *Taking a judgment against a portion of the defendants amounts to a dismissal of the case as to the residue, and, in actions ex delicto, this may be done.*" (Emphasis added.) 41 Ill. 405, 409.

Applying the *Davis* rule here, defendants suggest that taking a judgment against a portion of the defendants (Cape defendants) in Nos. 78-L-201 and 78-L-202 amounted to a dismissal of the case as to the residue (defendants-appellees). In reply, plaintiffs argue, *inter alia*, that *Davis* is inconsistent with the general rule that an unsatisfied judgment against one tortfeasor does not bar a further action against another tortfeasor, that the defendants were voluntarily dismissed from Nos. 78-L-201 and 78-L-202 before a money judgment was entered in those cases and thus were not residue defendants as stated in *Davis*, and that the judgments in those cases are void because of jurisdictional defects. For reasons given below, we agree with plaintiffs that *Davis* is inapplicable to the situation here since defendants were not in the residue at the time the money judgments were entered.

To properly understand the *Davis* court's opinion as it applies the unit judgment rule, we first look to that doctrine as it heretofore existed and the requirements it imposed in obtaining a judgment against "joint" obligors. At common law, a judgment against joint defendants was regarded as an entirety which had to stand or fall as an entirety whether the liability which gave rise to the judgment was joint or joint and several. (*Chmielewski v. Marich* (1954), 2 Ill. 2d 568, 119 N.E.2d 247.) Thus, it was held that if a plaintiff sued multiple defendants alleging a joint liability, the verdict and judgment had to be against all or none of the defendants (*Davidson v. Bond* (1850), 12 Ill. 84; *Kingsland v. Koeppe* (1891), 137 Ill. 344, 28 N.E. 48), and that if several defendants were sued jointly for the same debt, it was error to render a judgment against fewer than all of the defendants in the action. (*Dow v. Rattle* (1851), 12 Ill. 373.) It was even held that a trial court could not grant a post-trial motion of one defendant who was alleged to be jointly liable without vacating the judgment against all the other jointly liable defendants. See *Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755; *Frow v. De La Vega* (1872), 82 U.S. 552, 21 L. Ed. 60.

The unit judgment rule was the concern of the *Davis* court since the facts indicated that one of the defendants (Young) had been served with process but no judgment had been entered against her. The court in *Davis* stated that the unit judgment rule was not applicable to actions in tort, and then in paying homage to the rule that it had just found inapplicable, stated that, in any event, taking a judgment against a portion of defendants amounted to a dismissal of the case as to the residue, thus satisfying the requirement that the judgment had to dispose of all of the defendants.

As for the present applicability of the unit judgment rule, it was overruled in *Chmielewski v. Marich* (1954), 2 Ill. 2d 568, 119 N.E.2d 247, leaving the court to comment that "[w]hatever may have been the considerations which prompted the original adoption of the broad common-law [unit judgment] rule, we have been unable to discover any which are now relevant." (2 Ill. 2d 568, 576, 119 N.E.2d 247, 251.) It is now clear that more than one judgment may be rendered in the same case and the fact that any order or judgment is joint does not deprive the court of the power to set it aside as to fewer than all of the parties. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1301.) Under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), moreover, a judgment against fewer than all of the parties to a suit, as in *Davis*, does not operate as a judgment in favor of the residue, but the judgment is simply not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights and liabilities of all the parties.

Taken with an understanding of the unit judgment rule, the *Davis* court's *dicta* that a judgment against fewer than all the defendants amounts to dismissal by operation of law satisfied the rule that the judgment had to dispose of all the parties to the action. The unit judgment rule was later overruled and any *dicta* about the implied dismissal of residue defendants has, we believe, taken the same path. Nevertheless, we do not need to decide that issue here since it is clear that an essential prerequisite for that rule has not been satisfied since, at the time that a money judgment was entered in Nos. 78-L-201 and 78-L-202, there was no residue of defendants as to whom an implied dismissal could operate. The defendants in this appeal had been voluntarily dismissed by plaintiffs without prejudice before any final judgment had been entered against the defaulters, and after a voluntary dismissal without prejudice another action may be instituted. Ill. Rev. Stat. 1981, ch. 110, par. 2—1009; *Gilbert v. Langbein* (1951), 343 Ill. App. 132, 98 N.E.2d 140.

■ Defendants also rely upon other decisions which cite the

*Davis* rule, in support of the trial court's order of summary judgment, but we find these cases inapposite. Some of the cases cite *Davis* for the proposition that a plaintiff in a tort action may take a judgment against less than all of the defendants in an action in tort (*Illinois Central R.R. Co. v. Foulks* (1901), 191 Ill. 57, 60 N.E. 890; *Postal Telegraph-Cable Co. v. Likes* (1907), 225 Ill. 249, 80 N.E. 136; *Vieths v. Skinner* (1893), 47 Ill. App. 325), while others cite *Davis* as support for a holding that multiple judgments may not be entered in tort actions in the same case where the liability of the defendants is alleged to be joint and several. (*Lynch v. City of Chicago* (1909), 152 Ill. App. 160.) Without taking issue with these cases, we do not see how they are applicable to the present situation. Here, the defendants have been sued in separate actions and thus there is no possibility that multiple judgments will be rendered in the same case. The rule followed in this State is that tortfeasors may be sued in separate suits; separate judgments and verdicts may be recovered, and it is no defense that all of the tortfeasors have not been joined in the same action. (*Chmielewski; City of Roodhouse v. Christian* (1895), 158 Ill. 137, 41 N.E. 748.) The only limitation is that plaintiff may only recover one satisfaction for his injury.

For example, in *Christian*, plaintiff was shocked by a telephone wire which was strung across a city sidewalk, and sued the electric company and recovered a judgment of $1,250 and then sued the city in a separate suit and recovered a judgment of $2,500. In the second action against the city, a defense of *res judicata* was raised but stricken by the trial court. On appeal, the supreme court affirmed the trial court stating that "[t]hese pleas [*res judicata*] do not aver satisfaction of the judgment obtained against the electric and power company, and under this declaration we are unable to see wherein the doctrine of the liability of joint tort feasors has any application whatever." (158 Ill. 137, 140, 41 N.E. 748, 749.) Although the opinion never discusses which judgment would have to be satisfied, it indicates that a bar against obtaining more than one judgment against several tort-feasors arises only when one of the judgments has been satisfied.

The defendants also cite the cases of *Frow v. De La Vega* (1872), 82 U.S. 552, 21 L. Ed. 60, and *In re Uranium Antitrust Litigation* (7th Cir. 1980), 617 F.2d 1248, as support for the trial court's judgment. These decisions discuss the appropriate procedure to be taken where multiple defendants are sued on a single cause of action and some of the defendants default while others appear to litigate the questions of liability and damages. For reasons given below, we also

find these cases inapposite here.

In *Frow*, plaintiff De La Vega charged several defendants with *jointly* conspiring to defraud him of title to a tract of land. One of the defendants (Frow), did not appear and a default judgment was entered against him, while those defendants who did appear went to trial and a judgment was entered in their favor. Frow appealed and argued that it was erroneous to enter a default judgment against him while entering judgment in favor of the others. The Supreme Court agreed, stating that the true mode of proceeding where a complaint made a *joint* charge against several defendants and one of them makes a default was to enter a decree *pro confesso* against the defaulter and then proceed with the cause upon the answers of the other defendants. The court continued that if the suit was decided against the plaintiff on the merits, the bill would be dismissed as to all the defendants alike, the defaulter as well as the answering defendants. If the suit was decided in the plaintiff's favor, he would then be entitled to a final decree against all of the defendants. Concluding, the court noted: "But final decree on the merits *against the defaulting defendant alone,* pending the continuance of the cause, would be incongruous and illegal." (Emphasis added.) *Frow v. De La Vega* (1872), 82 U.S. 552, 554, 21 L. Ed. 60, 61.

A similar situation arose in *In re Uranium Antitrust Litigation* (1980), 617 F.2d 1248, although there the defendants were alleged to be not only jointly liable but jointly and severally liable for the plaintiffs' damages. There, Westinghouse sued a number of foreign and domestic corporations for alleged price-fixing in the uranium market and sought joint and several liability under the Sherman Antitrust Act. Some of the foreign defendants defaulted and the district court entered a default order and allowed plaintiffs to proceed to trial on damages against those defendants who had defaulted. The appearing defendants took an interlocutory appeal and argued that it was erroneous to enter a default judgment pending the disposition of the case as to the answering parties and that it was also error to proceed to a trial on the issue of damages. Distinguishing *Frow*, the seventh circuit approved the practice of entering a default decree against the defaulters in a suit where the liability was not merely joint but was alleged to be joint and several, but held that the trial court had erred in allowing plaintiffs to proceed to trial on the issue of damages against the defaulters. In explaining this position on the damage issue, the court indicated that if damages were to be entered against the defaulters and Westinghouse prevailed on the merits against the answering defendants, a separate damage award would then be entered. The

court stated that "[t]he possibility of two distinct determinations as to the damages arising out of a single price-fixing claim is, indeed, an inconsistency. Just as the several or independent nature of plaintiffs' claim permits different findings as to liability of individual defendants, the joint nature of plaintiffs' claim prohibits different findings as to damages against all defendants. While our research has uncovered situations in which inconsistent verdicts as to damages have resulted on a claim involving joint liability, the wholly unsatisfactory manner in which those cases have been handled convinces us that such a result is erroneous and must be avoided." (617 F.2d 1248, 1262.) The court later provided an option for the plaintiff if it sought to proceed against the defaulters immediately by suggesting that "[h]owever, should Westinghouse elect to dismiss its claim against the answering defendants, with prejudice, the liability of each defendant would be resolved and Westinghouse could proceed to a determination of damages as to the defaulters immediately." 617 F.2d 1248, 1262.

Neither *Frow* nor *In re Uranium Antitrust Litigation* express anything essentially different from the law in this State. Our supreme court in an early decision held, similar to *Frow*, that if a plaintiff brings suit against several parties liable for a *joint* obligation and one of the parties defaults, the trial court should hold only one trial to try the issue of damages as to the defaulter and the liability of those defendants who appear. (*Teal v. Russell* (1840), 3 Ill. (2 Scam.) 319.) Similar to *In re Uranium Antitrust Litigation,* it has also been held reversible error to enter separate money judgments in the same action where the defendants are charged with a joint and several liability for plaintiffs' indivisible injury. (*Michels v. Bezley* (1957), 12 Ill. App. 2d 456, 140 N.E.2d 134.) Nevertheless, there is no possibility of separate judgments in the same action here since, as we have noted, the defendants were dismissed from the first suit without prejudice before a money judgment was entered. Moreover, neither *Frow* nor *In re Uranium Antitrust Litigation* are on point in this appeal because the issue here is not what the appropriate procedure should have been in Nos. 78-L-201 and 78-L-202 when the default occurred and plaintiffs went to trial on damages, but the issue here is whether the plaintiffs are prohibited from bringing the present action after dismissing the defendants without prejudice from the first suit. We know of no authority prohibiting separate findings of liability in separate suits and such procedure was expressly permitted in *City of Roodhouse* which we have discussed above.

■ Defendants also suggest that the judgment below should be affirmed because plaintiffs have impermissibly split their cause of

action in both suits. It is well settled that the law requires that a plaintiff assert all grounds for recovery against a defendant, arising from a single cause of action, in one lawsuit and this rule rests upon the plainest and most substantial principle that litigation should have an end so that no person is unnecessarily harassed with a multiplicity of suits. (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 387 N.E.2d 831.) Just how the plaintiffs have impermissibly split their cause of action is not apparent to us and it is not adequately explained by the defendants. Plaintiffs did not take judgment against the defendants in this appeal in Nos. 78-L-201 and 78-L-202 since they were dismissed without prejudice. What defendants apparently suggest is that plaintiffs are required to join all jointly and severally liable tortfeasors in a single action, but as noted in *Chmielewski*, a plaintiff need not join all tortfeasors as defendants in an action, since the liability is not only joint but several. Because we find the summary judgment unsupportable on any grounds apparent from the record, the trial court's judgment is reversed and the cause is remanded for further proceedings. A motion for summary judgment should be granted only where the pleadings, exhibits, depositions and affidavits of record show that there is no genuine issue of material fact and that the movement is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) Because this is a drastic measure, however, it is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. (*Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d 1033; *Pitler v. Michael Reese Hospital* (1980), 92 Ill. App. 3d 739, 415 N.E.2d 1255.) Although there are no disputed issues of fact in this case, we conclude that the defendants have not clearly established their right to summary judgment.

 We next turn our attention to the cross-appeal, but before doing so we deny defendant's motion to strike certain parts of plaintiffs' reply brief, which defendants claim raises new matter, contrary to Supreme Court Rule 341(g) (87 Ill. 2d R. 341(g)). Plaintiffs cite section 2—410 of the Civil Practice Law in their reply brief which states that "[a] judgment against fewer than all the parties to a joint or partnership obligation does not bar an action against those not included in the judgment or not sued." (Ill. Rev. Stat. 1981, ch. 110, par. 2—410.) We agree with the defendants that plaintiffs have alleged new matter in their reply brief since they cite this section for the first time, but we have considered this section in any event since it is our prerogative to consider points made for the first time in reply briefs (*Occiden-*

*tal Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 346 N.E.2d 482), at oral argument (*Siebach v. Pienta* (1978), 60 Ill. App. 3d 645, 377 N.E.2d 393), and even on the court's own motion. (*Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) We do not find section 2—410 persuasive however, since the section refers to joint debtors and partnership obligations which is not the claim made here, a joint and several claim in tort. At common law, it was held that if parties were charged with a joint obligation as on a contract, taking a judgment against one of the joint obligors merged the cause of action into the judgment which acted to bar a subsequent suit against another party also alleged to be jointly liable. (*Jansen v. Grimshaw* (1888), 125 Ill. 468, 17 N.E. 850.) In an action sounding in tort, however, it is not the entry of the judgment which operates as a bar to a suit against other tortfeasors, but the satisfaction of the judgment. (*City of Roodhouse*.) We interpret section 2—410 as implementing the rule that all joint obligations are also declared to be joint and several obligations (Ill. Rev. Stat. 1981, ch. 76, par. 3) and as changing the doctrine of merger insofar as it formerly applied to actions in contract. See Ill. Ann. Stat., ch. 110, par. 2—410, Joint Committee Comments, at 506 (Smith-Hurd 1983).

■ The cross-appeal by Owens-Corning Fiberglas Corporation arises from the trial court's denial of a motion to dismiss the suit of plaintiffs, John Handley and Edith Babb. Plaintiffs have filed a motion to dismiss the cross-appeal on the ground that a denial of a motion to dismiss is not a final order which can be reviewed. As plaintiffs note, it is a general rule that a denial of a motion to dismiss a complaint is not a final and appealable order, but here a final order was entered dismissing plaintiffs' suit against Owens-Corning, and once the final order was entered, all of the preliminary orders in the suit were also reviewable. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483.) Plaintiffs principal authority *People v. American National Bank & Trust Co.* (1965), 32 Ill. 2d 15, 203 N.E.2d 897, supports our denial of the motion to dismiss, for while the court there noted the general rule that orders denying motions to dismiss are not appealable, the court allowed an appeal from a denial of a motion to dismiss since other portions of the order in question made final determinations affecting substantive issues in the case. The granting of Owens-Corning's motion for summary judgment dismissed all of plaintiffs' claims against Owens and the preliminary order denying Owens-Corning's motion to dismiss is not properly before us.

Included in the multi-count complaint filed in case No. 80-L-93,

were claims by plaintiffs John Handley and Edith Babb, as representative of the estate of Joseph Babb, seeking damages from Owens-Corning for injuries Handley and Babb received while working in defendant's plant in Bloomington. Handley brought individual claims and plaintiff Babb brought wrongful death and survival actions (Ill. Rev. Stat. 1981, ch. 70, par. 1; Ill. Rev. Stat. 1981, ch. 110½, par. 27—6), and an action under section 15 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1981, ch. 40, par. 1015) on theories of intentional murder, fraud, and battery. One count alleged, *inter alia*, that "[d]efendant intended to kill plaintiff and his coworkers in that it knew that exposing plaintiffs and his coworkers to huge amounts of asbestos caused a strong probability of death." In the fraud count, plaintiffs charged that defendant had fraudulently concealed the dangers of working with asbestos to plaintiffs; that plaintiffs were not aware of the hazardous properties of asbestos; that defendant represented that asbestos was not harmful and made representations with the intent that plaintiff and his coworkers would rely upon them. The battery count alleged, *inter alia*, that "defendant's conscious purpose was that asbestos would become trapped in the lungs and bodies of the workers" and defendant "intended bodily harm to plaintiffs." Defendant Owens-Corning, in its motion to dismiss, argued, *inter alia*, that plaintiffs' causes of action were barred by the exclusive remedy provisions of the Workers' Occupational Diseases Act. (Ill. Rev. Stat. 1981, ch. 48, pars. 172.40, 172.46.) Without stating its reasons for ruling on the motions, the trial court denied the motion to dismiss.

■ Plaintiffs have not filed a brief in this court addressing the issues raised in the cross-appeal, although they have filed a brief confined to a discussion of this court's lack of jurisdiction over the cross-appeal. We regard the failure to file a brief responsive to the issues on the cross-appeal and in support of the judgment below as the equivalent of failing to file a brief in this court, and, accordingly, if the cross-appellant's brief demonstrates *prima facie* error and finds support in the record, the trial court's judgment may be reversed. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Plaintiffs' theories of murder, fraud and battery were apparently alleged to escape the exclusive remedy provisions of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1981, ch. 48, pars. 172.40, 172.46) as the complaint alleges that the claims against Owens-Corning are not barred by the exclusive remedy provisions because defendant's intentional conduct was not a risk of employment. Alternatively,

the complaint alleged that if plaintiffs were not allowed to maintain a civil action their constitutional rights would be denied. In particular, the complaint alleged that allowing claimants suffering from exposure to radiological materials 25 years to file a claim, while imposing a three-year limitation period for filing a claim under the Workers' Occupational Diseases Act for exposure to asbestos (Ill. Rev. Stat. 1981, ch. 48, par. 172.36(f)), denied them equal protection of the law. (Ill. Const. 1970, art. I, sec. 2.) In addition, plaintiffs alleged that 70% of the victims of asbestos poisoning do not develop clinical evidence of the disease until more than 15 years have passed, and that since the limitation period for asbestos claims is three years from date of last exposure, they would be denied a remedy for their injury in violation of article I, section 12, of the Illinois Constitution if they could not bring a civil action. (Ill. Const. 1970, art. I, sec. 12.) Plaintiffs also alleged that the combined effect of the three-year limitation period and the exclusive remedy provisions granted employers of asbestos workers a special immunity in violation of article IV, section 13, of the Illinois Constitution. (Ill. Const. 1970, art. IV, sec. 13.) As for the constitutionality of the three-year limitations period, we need not address this issue since it is not ripe for review. None of the plaintiffs seek a declaratory judgment that this limitation provision is unconstitutional, and we are not reviewing a denial of any claim made under the Workers' Occupational Diseases Act. It is the duty of this court to decide actual controversies which can be carried into effect and not to give opinions upon abstract propositions or to declare principles of law which do not affect the matter in issue. (*Johnson v. Quern* (1980), 90 Ill. App. 3d 151, 412 N.E.2d 1082.) The only constitutional issues properly before us are whether denying plaintiffs their right to maintain the civil action would violate the constitutional provisions providing for a remedy for all injuries, and whether the combined effect of the three-year limitation provision and the exclusive remedy statute grants asbestos employers a special immunity in violation of article IV, section 13, of the Illinois Constitution. Since we hold that plaintiffs' civil claims are not barred by the exclusive remedy provisions, however, we express no opinion on the constitutional issues. See *Bunker v. National Gypsum Co.* (Ind. 1981), 426 N.E.2d 422, *rev'd* (Ind. 1982), 441 N.E.2d 8, *cert. denied* (1983), 460 U.S. 1076, 76 L. Ed. 2d 338, 103 S. Ct. 1761.

■ In addition to making arguments on the constitutional issues noted above, defendant Owens-Corning argues that plaintiffs' suit is barred by the plain language of the exclusive remedy provisions, that no exception should be created to the statutory provisions by judicial

legislation, and that a recognition of plaintiffs' suit would upset the carefully developed system of compensation which was the *quid pro quo* for requiring employers to give up traditional defenses available in common law actions. For reasons which follow, we affirm the denial of the motion to dismiss, as we conclude that plaintiffs' claims are not barred by the exclusive remedy provisions of the Workers' Occupational Diseases Act.

The Workers' Occupational Diseases Act provides compensation for diseases arising out of, and in the course of, employment (Ill. Rev. Stat., 1981, ch. 48, par. 172.36) and contains provisions similar to those found in the Workers' Compensation Act, after which it was modeled, which provides that the liability of the employer is in lieu of all other actions for damages. Section 5(a) of the Workers' Occupational Diseases Act provides:

> "There is no common law or statutory right to recover compensation or damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided or for damages as provided in Section 3 of this Act. This Section shall not affect any right to compensation under the 'Workers' Compensation Act'." Ill. Rev. Stat. 1981, ch. 48, par. 172.40(a).

Defendant has not cited any cases interpreting the exclusive remedy provisions of the Workers' Occupational Diseases Act, although we have been referred to several cases interpreting similar provisions in the Workers' Compensation Act which we find persuasive here, especially in light of the supreme court's statement in *Dur-Ite Co. v. Industrial Com.* (1946), 394 Ill. 338, 68 N.E.2d 717, that the exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act were "homologous" for purposes of judicial construction.

Defendant Owens-Corning contends that the provisions of the exclusive remedy statute are plain and unambiguous and admit no exceptions to the bar of the statute, but we believe that any such argument is foreclosed by the decision of our supreme court in *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 237, 408 N.E.2d 198, 202, in which the supreme court stated: "To escape the bar of these sections [Ill. Rev. Stat. 1973, ch. 48, pars. 138.5(a), 138.11], plaintiff would have to prove either that the injury (1) was not accidental (2)

did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." In *Collier*, the employee charged the employer with intentional infliction of emotional distress resulting from the employer's medical personnel's refusal to treat plaintiff who had suffered a heart attack on the job. The supreme court held that the action against the employer was barred because there was no allegation that the employer directed, encouraged, or committed an intentional tort. In discussing the case of *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924, the court stated: "the law's paramount interest is to avoid shielding from liability one who intends to do harm and, further, that the legislature could not be presumed to have intended to permit an intentional tortfeasor to shift his liability to a fund paid for with premiums collected from innocent employers." *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 240, 408 N.E.2d 198, 203.

A similar exception was stated in this court's opinion in *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1. In *Mier*, the directors and officers of a corporation directed plaintiff, a clerk, to take over for striking workers in operating machinery in a plant. Plaintiff was injured while working and she sued the directors and officers alleging that they were wilfully and wantonly negligent in requiring officer personnel to work with machinery that was dangerous to inexperienced workers. In upholding the dismissal of plaintiff's complaint, this court stated that only intentional torts were outside the exclusive remedy provisions of the Workers' Compensation Act.

In *Kofron v. Amoco Chemicals Corp.* (Del. 1982), 441 A.2d 226, however, the Delaware Supreme Court, in two consolidated cases, held that complaints against manufacturers of asbestos products for injuries suffered by employees, alleging gross negligence and fraud, were properly dismissed as barred by the exclusive remedy provisions of a Delaware workmen's compensation law. The court reasoned that any exception was a matter for legislative determination and that the statute in that State provided compensation for all occupational diseases, while noting that plaintiff's complaint did not allege that the employer maintained the condition for the purpose of causing injury to its employees.

Here, in contrast, the allegations of plaintiffs' complaint alleged that defendant intended to kill the plaintiff and his coworkers, that defendant's conscious purpose was the asbestos would become trapped in the lungs and bodies of the workers and that defendant intended bodily harm to plaintiffs. The fraud count also alleged, *inter alia*, that defendant represented to plaintiffs that asbestos dust was

not harmful; defendant knew its representations were false and that the plaintiffs would become ill and die; defendant knew that plaintiffs were not aware of the hazardous properties of asbestos dust and that defendant made the representations with the intent that the decedent and his coworkers would rely upon them. These allegations are sufficient to allege that the employer directed, encouraged, or committed an intentional tort as stated in *Collier* to fall outside the exclusive remedy provisions of the Workers' Occupational Diseases Act. The Workers' Occupational Diseases Act, like the Workers' Compensation Act, establishes a system of liability without fault, and abolished traditional defenses available to the employer in exchange for the prohibition against common law suits by employees, but we are not persuaded that this legislative balance was meant to permit an employer who encourages, commands, or commits an intentional tort to use the act as a shield against liability by raising the bar of the statute and then shifting liability throughout the system on other innocent employers. At this stage, we are only ruling upon a motion to dismiss and it remains to be seen what proof plaintiffs have to substantiate these allegations. In determining the sufficiency of a complaint, a motion to dismiss admits all allegations which are well pleaded together with reasonable inferences which can be drawn from the facts. *Brooks v. Village of Wilmette* (1979), 72 Ill. App. 3d 753, 391 N.E.2d 133; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223.

For the foregoing reasons, the order of the circuit court of McLean County granting summary judgment for defendants are reversed and the cause is remanded for further proceedings not inconsistent with this opinion. The order denying Owens-Corning's motion to dismiss is affirmed and the motion to dismiss the cross-appeal is denied. The motion to strike portions of plaintiffs' reply brief is likewise denied.

Affirmed in part; reversed in part and remanded.

MILLS, P.J., and GREEN, J., concur.