NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 12, 2017[*]
Decided May 12, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-1888

| | |
|---|---|
| NATHANIEL JACKSON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-CV-1084 |
| ALTON ANGUS, et al., *Defendants-Appellees.* | Michael M. Mihm, *Judge.* |

**O R D E R**

This is the third time Nathaniel Jackson has sued staff at the Pontiac and Dixon correctional centers claiming that temporary transfers to Dixon for mental-health treatment violated his constitutional rights. *See* 42 U.S.C. § 1983. The district court concluded that this action is precluded by two earlier suits Jackson brought in the Illinois courts and, on that basis, granted summary judgment for the defendants. Because we conclude that those earlier suits are not preclusive as to all defendants and claims, we vacate the judgment in part and remand for further proceedings.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Jackson was involuntarily transferred to Dixon for mental-health services several times, though in his federal suit he focuses on the most recent transfers, occurring in March 2011 and July 2012. In his complaint he says he was treated for mental illness without consent and that prison authorities never provided a written statement detailing the evidence they relied upon in deciding he needed to be involuntarily transferred and treated. Moreover, he alleges, prison staff at the two prisons conspired to forcibly transfer and treat him in retaliation for previous grievances and civil-rights complaints about earlier incidents of forced treatment. And during the July 2012 transfer, Jackson says, the Pontiac tactical team beat him over the head with a shield, smashed his head against a wall, twisted his wrist, and repeatedly sprayed his genitals with pepper spray.

The first of Jackson's earlier lawsuits in Illinois, filed in Livingston County in March 2011, alleged that earlier that month several employees at Pontiac and Dixon had conspired to move him to Dixon for forced mental-health treatment, including unwanted psychotropic medication, in retaliation for submitting grievances and without following the requisite procedural safeguards. *See Jackson v. Angus, et al.*, No. 11-MR-33, slip. op. (Ill. Cir. Ct. Jan. 12, 2012). Jackson named as defendants Alton Angus, a psychologist at Pontiac, as well as Jamie Lynn Chess and Andrew Kowalkowski, both psychiatrists at Dixon. The second suit, filed in Lee County in November 2012, repeated those allegations about the March 2011 transfer and added similar allegations about the July 2012 transfer and mentioned the beating that occurred during that transfer. *See Jackson v. Chandler, et al.*, No. 12 MR 109, slip op. (Ill. Cir. Ct. June 5, 2013). In that suit Jackson again named Kowalkowski, but not the others, and added Curt Eubanks and Lawrence Weiner, both administrators at Dixon. In both state cases, even when invited to amend his complaints, the only relief Jackson requested was criminal prosecution of the named defendants. That relief was unavailable, of course, and for that reason both suits were dismissed. The presiding judge in the Lee County case clarified that he was "not stopping" Jackson from filing an appropriate civil complaint against the defendants. But Jackson said he did not want to pursue that option and insisted that he had a right to demand criminal prosecution of the defendants.

Jackson then filed the federal action underlying this appeal. In his amended complaint he repeats the allegations from his state cases about the 2011 and 2012 transfers and the beating. He again asks that the defendants be prosecuted but also includes a request for damages. The named defendants include some of the persons sued previously, along with first-time defendants John Garlick and Jose Matthews, both psychiatrists at Pontiac; Michael P. Melvin, the superintendent of Pontiac; and members of Pontiac's tactical team, including guards Kevin Edens, Brian Maier, Matthew Taylor, and William Zimmerman, who, Jackson alleges, inflicted the beating.

At screening, *see* 28 U.S.C. § 1915A, the district court ruled that Jackson's complaint states a claim that defendants Angus, Chess, Eubanks, Garlick, Kowalkowski, Matthews, Melvin, and Weiner denied him due process in connection with the forced transfers and mental-health treatment. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (holding that inmates have liberty interest in avoiding unwanted administration of psychotropic drugs); *Vitek v. Jones*, 445 U.S. 480, 491–96 (1980) (holding that involuntary transfer of prisoner to mental-health hospital implicates liberty interest and requires, among other things, advance written notice to prisoner and written statement by factfinder as to evidence relied upon and reasons for transfer). And, the district court continued, Jackson's complaint also states a claim for excessive force against the members of Pontiac's tactical team. Finally, the district court concluded that the complaint states claims of conspiracy and retaliation against all defendants. (Although in its screening order the district court inadvertently omitted the conspiracy claim from its list of claims allowed to proceed, the court corrected that oversight in a later order.) To the extent that Jackson challenges the district court's decision that his complaint does not state additional claims, we agree with the district court's analysis and will say no more about them.

The suit proceeded slowly, and Jackson several times asked the district court to recruit counsel. Each time the court declined with the explanation that Jackson could competently litigate the case himself. Indeed, Jackson twice had persuaded the district court to reopen the case—first, successfully arguing that the court had erred in deeming him to have three strikes under 28 U.S.C. § 1915(g) (the court had confused him with two other litigants named Nathaniel Jackson) and, second, convincing the court that his original complaint states a claim. In ruling on Jackson's last request for counsel, the court granted leave to ask again after its ruling on a pending dispositive motion.

That motion was the defendants' request for summary judgment on the sole ground of claim preclusion, which the court granted. The judge reasoned that both state cases had ended with a final judgment on the merits and presented the same causes of action as the federal suit because they involved the same series of events. The court also accepted the defendants' contention that everyone named in the federal suit had been sued previously or is in privity with the defendants in the state cases.

On appeal, Jackson argues that the Illinois suits do not preclude his federal case because, he contends, neither judgment was on the merits and also because he is asking for a different remedy and has named different defendants. He also argues that the district court erred in not recruiting a lawyer for him.

We begin with the issue of claim preclusion. Illinois law governs our analysis, since Illinois courts issued the judgments sought to be given preclusive effect. *See Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Illinois gives preclusive effect to a prior lawsuit if (1) a court of competent jurisdiction rendered a final judgment on the merits, (2) the new lawsuit involves the same "cause of action" as the old, and (3) there is an identity of parties or their privies between the suits. *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011). If these elements are met, the prior judgment will preclude even claims that could have been, but were not, litigated in the first suit. *Id.* Different claims will constitute the same "cause of action" if they "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998); *see Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558 (7th Cir. 2014).

We agree with the district court that the state suits ended in a final judgment on the merits. In Illinois, "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." ILL. S. CT. R. 273; *see Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 8–9 (Ill. 2016). The dismissal in each suit was involuntary and does not fit any exception in the rule. Jackson argues that the judgments were not on the merits because the courts simply ruled that the relief he wanted was unavailable and did not address the allegations underlying his claims. He cites *Foreman v. Martin*, 325 N.E.2d 378, 379–80 (Ill. App. Ct. 1975), which holds that a judgment is not on the merits if the plaintiff was seeking "a form of remedy which turns out to be unavailable" and "is not precluded from subsequently maintaining an action in which he seeks an available remedy." Yet in both state cases Jackson was allowed to amend his complaint, and, at least in the second suit, the judge clearly explained that Jackson might have a civil cause of action. Both times Jackson persisted in asking only for criminal prosecution. This was not "a misconception of the remedy" but rather, even if ill considered, a "tactical decision to split the lawsuit into separate actions to be brought in separate venues," which is impermissible in Illinois. *Thorleif Larsen & Son, Inc. v. PPG Indus., Inc.*, 532 N.E.2d 423, 426–27 (Ill. App. Ct. 1988); *see Quintas v. Asset Mgmt. Grp., Inc.*, 917 N.E.2d 100, 103 (Ill. App. Ct. 2009) (noting that Illinois courts adhere to "general rule against the splitting of claims or causes of action").

But we must proceed with caution as to the next two elements because Jackson's complaints in the state suits are not identical to each other or to his federal complaint. Obviously the Livingston County suit could not have any preclusive effect as to causes of action arising from Jackson's transfer in July 2012, which had not yet occurred. The

Lee County suit, however, does involve the same causes of action as the federal suit, despite the different relief requested. *See Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 576 (7th Cir. 2013). Even if the state suits can be characterized as mandamus actions, as at least one of the state judges thought, Jackson still could have brought a claim for damages in the same action. *See Wozniak v. Cnty. of Dupage*, 845 F.2d 677, 681 (7th Cir. 1988) ("Under Illinois law, the [plaintiffs] not only could but should have joined their damage claim under Section 1983 with their mandamus claim in state court."); *Charles Koen & Assoc. v. City of Cairo*, 909 F.2d 992, 998–99 (7th Cir. 1990) (same).

The significant wrinkle, though, is that not all of the federal defendants were named in the state cases. The Illinois rule against claim splitting does not preclude separate actions against separate defendants, *see* 1 NICHOLS ILL. CIV. PRAC. § 5:20; *Handley v. Unarco Indus., Inc.*, 463 N.E.2d 1011, 1017 (Ill. App. Ct. 1984), so Jackson was not required to name all defendants in one suit. This would not matter if, as the district court thought, all of the defendants were in privity with those sued in state court. But they were not. Privity exists between parties representing the same legal interest. *See People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825–26 (Ill. 1992). Each defendant in the federal case is sued in his individual capacity (as is necessary for a damages claim under § 1983). Their legal interests and defenses may very well differ; when a defendant is sued in his individual capacity, he is held responsible only for his individual wrongdoing. *See Lewis v. Clarke*, No. 15-1500, 2017 WL 1447161, at *7 (U.S. Apr. 25, 2017). And it does not make a difference that the Department of Corrections employs many of the defendants—old and new—or that they might be covered by the State Employee Indemnification Act, 5 ILCS 350/2, and be represented by the same state agency. *See id.* at *6 (explaining that in determining legal interest the "critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab"); *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988) (adverse judgment in city employee's suit against city for retaliatory discharge did not preclude subsequent suit against two city officials in their personal capacity); *Beard v. O'Neal*, 728 F.2d 894, 897 (7th Cir. 1984) (concluding that prior suit against one FBI agent did not preclude later suit against his supervisor regarding same incident because both were sued in personal capacity and thus were not privies).

Therefore, each state suit is preclusive only as to the defendants named and the actions alleged in that suit. The Lee County suit, which encompassed all causes of action included in the federal suit, precludes all claims against Weiner, Eubanks, and Kowalkowski. But because defendants Angus and Chess were named only in the Livingston County suit, the only claims precluded against them are those arising from the March 2011 transfer. And because Garlick, Matthews, Melvin, and the members of

the Pontiac tactical team were not named in either of the state suits, none of Jackson's claims against them are precluded.

We note that the defendants misleadingly assert that several more of the federal defendants were previously sued in the Livingston case; but they were named only in a proposed amended complaint, which the court denied leave to file. They were thus never added to the suit and cannot claim any preclusive effect from it.

Finally, we turn to Jackson's contention that the district court erred in not recruiting counsel. The court correctly considered whether Jackson was competent to litigate his particular case, *see Romanelli v. Suliene*, 615 F.3d 847, 854 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc), and its conclusion was reasonable. Jackson twice successfully persuaded the court to reopen his case. Moreover, the court stated it would reconsider Jackson's request should the case proceed, so on remand Jackson may resubmit his motion.

We have considered Jackson's remaining arguments, and none has merit.

Accordingly, we VACATE the judgment as to defendants Angus, Chess, Edens, Garlick, Maier, Melvin, Matthews, Taylor, and Zimmerman and REMAND for further proceedings consistent with this order. In all other respects, we AFFIRM the judgment.