In Re: Katherine B. Turner. Katherine B. Turner, Appellant.

Argued April 6, 1979, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Francis J. Connell, III,* with him *Drinker, Biddle & Reath,* for appellant.

*Sally A. Lied,* Deputy Attorney General, with her *J. Andrew Smyser,* Deputy Attorney General, and *Gerald Gornish,* Attorney General, for appellee.

328

OPINION BY JUDGE BLATT, July 18, 1979:

Katherine B. Turner (appellant) appeals a decision of the Pennsylvania Crime Victim's Compensation Board (Board) that she is not eligible for compensation under Section 477 of The Administrative Code of 1929 (Code).[1] This is the definitional section of the act which created the Crime Victim's Compensation Board and established a formula for the compensation of crime victims. The Board ruled that her husband was not the victim of a crime within the meaning of the Code.

The appellant's husband, while driving with the appellant and their son, was struck by an automobile driven by Helen Patricia Davis, who was subsequently tried on charges of murder and involuntary manslaughter. The evidence at the Davis trial indicated that she was traveling on a four-lane divided highway at an excessive rate of speed and in a reckless manner when she lost control of her car and it crossed the median, colliding with the appellant's car. She was convicted on the charges. The Board denied the appellant's claim because, it reasoned, the appellant's husband was not the victim of a "crime" within the meaning of Section 477, which contains the following restrictive provision:

> Provided, however, That no act involving the operation of a motor vehicle which results in injury shall constitute a crime for the purpose of this act unless such injury was intentionally inflicted through the use of a motor vehicle.

The Board's position was that the injury inflicted on the victim here was not "intentionally inflicted" as these words are commonly understood. The appellant argues, however, that we should construe these words liberally so as to encompass the circumstances of this

---

[1] Act of April 9, 1929, P.L. 177, *as amended*, added by Section 2 of the Act of July 9, 1976, P.L. 574, *as amended*, 71 P.S. §180-7.

case, in which the conduct exhibited was evidence, at least, of a conscious disregard of a high risk of causing death. Alternatively, she argues that this section is not applicable here because the restriction here concerned speaks only of an act where an "injury" is "intentionally inflicted," whereas her husband suffered death.

Under the Statutory Construction Act of 1972, 1. Pa. C.S. §1903(a), words not defined by the legislature are to be construed "according to their common and approved usage" unless they are technical or "have acquired a peculiar and appropriate meaning." The appellant, in essence, urges us to construe the word "intentionally" as equivalent to having general criminal intent. We do not believe, however, that the word as used by the legislature here is synonymous with the technical criminal-law concept. Simply put, criminal intent is an element of common-law crimes which is sometimes denominated *mens rea* and which refers to the mental state of the accused at the time the criminal act was committed. *See* Perkins, Criminal Law 743 (2d ed. 1969). It encompasses reckless and even negligent misconduct as well as knowing and purposeful acts. *See* Perkins, *supra*, at 744-45 and 752-64. Inasmuch as criminal intent is an element of most crimes, the restriction imposed by Section 477 would be practically meaningless if we were to equate "having criminal intent" with "intentionally." The result of such a construction would be that every victim of an automobile accident, in which the driver responsible was charged with a crime as a result of gross negligence or recklessness, would be entitled to compensation from the state. Clearly, this is the precise situation which the legislature was attempting to avoid when it included the motor-vehicle injury restriction, and we cannot construe a statute to defeat its clear legislative purpose.

It seems to us that the more reasonable construction of "intentionally," and the meaning intended by the legislature, is suggested by Professor Perkins in his text on criminal law. Intent, he observes, embraces "those consequences which (a) represent the very purpose for which an act is done (regardless of the likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of the desire)." Perkins, *supra*, at 747 (footnote omitted).[2] "Substantially certain," he indicates in a footnote, is equivalent to "bound to happen" or "inevitable concomitant." Under Section 477, therefore, a motor-vehicle injury could be "intentionally inflicted" only if the act resulting in injury was committed (1) with the purpose of causing the injury or death of another or (2) with knowledge that the injury or death of another would be an inevitable consequence. The first situation might be illustrated if a person uses a car as a weapon with the design of killing or injuring another, such as by running down a rival or an enemy. The second situation might be illustrated if a person uses a car in a manner which he or she knows will inevitably result in death or injury to another (even though no particular harm is desired), such as driving purposefully into a crowd of people who are blocking his or her passage.[3] Having examined the record in

---

[2] This definition is also suggested in Restatement (Second) of Torts §8A, Comment b (1965) :

All consequences which the actor desires to bring about are intended. . . . Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decrease, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness. . . .

[3] *Cf.* Restatement (Second) of Torts §8A, Illustration 2 (1965) : On a curve in a narrow highway A, without any desire to

this light, we are unable to conclude that the Board erred when it held that the circumstances of this case do not support the conclusion that the victim's injuries were "intentionally inflicted." Although the driver's actions here may have exhibited a hardness of heart and a wickedness of disposition sufficient to support a verdict of third-degree murder,[4] we do not believe that such malice rises to the level of intent within the meaning of Section 477.[5]

As to whether or not the word "injury" as used in the Code includes death, we think that it does and that the motor-vehicle injury restriction is therefore applicable here. Like "intentionally," the word "injury" is not defined in the Code, nor do we think it is used in any technical sense. Looking, therefore, to its common usage, we observe that "injury" is defined in *Webster's Third New International Dictionary* 1164 (1966) as "an act that damages, harms or hurts: an unjust or undeserved infliction of suffering or harm ... [or] hurt, damage, or loss sustained. ..." Certainly, an act which so "damages, harms or hurts" that death results fits within the above definition.

We are aware, as the appellant emphasizes, that in other sections of the compensation provisions, the legislature speaks in terms of "injury or death." We do not believe, however, as the appellant contends, that the legislature therefore intended to exclude death

---

injure B, or belief that he is substantially certain to do so, recklessly drives his automobile in an attempt to pass B's car. As a result of this recklessness, A crashes into B's car, injuring B. A is subject to liability to B for his reckless conduct, but is not liable to B for any *intentional* tort. (Emphasis added.)

[4] *See Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975).

[5] [A]n act may involve a wanton and willful disregard of an unreasonable human risk as to constitute malice aforethought even if there is no actual intent to kill or injure. Perkins, *supra*, at 36.

from the motor-vehicle injury restriction. In the first place, there are at least three other sections in which the legislature mentions only "injury" without any apparent motive for distinguishing between injury and death,[6] so we believe that the reference only to "injury" here reflects merely a lack of symmetry and precision in the drafting of these provisions, rather than an intent to exclude death from their coverage. In the second place, excluding death from the meaning of "injury" would have an unreasonable result that the legislature would not have intended. For example, Section 477.9(b) of the Code,[7] provides:

> Any award made pursuant to sections 477 to 477.15 shall be in an amount not exceeding out-of-pocket loss, together with loss of past, present or future earnings or support resulting from such *injury*. In no case shall the total amount of an award exceed twenty-five thousand dollars ($25,000). (Emphasis supplied.)

Were we to accept the appellant's position that "injury" does not include death, the result would be that out-of-pocket loss and loss of earnings and support would not be compensated if the victim of a crime died. In other words, only victims who survived could be compensated—a plainly unreasonable result which is contrary to the manifest intent of the legislature. Believing as we do that a statute must be construed as a whole, giving reasonable effect to all its provisions,[8] we are bound to hold that, as employed here, the word "injury" includes death.

The order of the Board must therefore be affirmed.

---

[6] Section 477.9(b) of the Code, 71 P.S. §180-7.9(b); Section 477.9(e) of the Code, 71 P.S. §180-7.9(e); Section 477.9(f) of the Code, 71 P.S. §180-7.9(f).

[7] 71 P.S. §180-7.9(b).

[8] *See* 1 Pa. C.S. §1921(a); *Crary Home v. DeFrees*, 16 Pa. Commonwealth Ct. 181, 329 A.2d 874 (1974); 2A J. Sutherland, Statutes and Statutory Construction 56-68 (4th ed. C. Sands 1973).

ORDER

AND NOW, this 18th day of July, 1979, the order of the Crime Victim's Compensation Board in the above-captioned matter is hereby affirmed.