529 A.2d 491

Anthony A. BARBER, et al., Appellants,

v.

PITTSBURGH CORNING CORPORATION, et al.,

v.

COMMONWEALTH of Pennsylvania, and American Flint Glass Workers Union, AFL–CIO.

Sylvester CONNOR, Melvin Fuller, Reuben M. Harris, Millard Reese, Joseph D. Ryan, David K. Smoker, Carl F. Steinbaugh, Stanley G. Stuckey, Raymond Vandermark, Eleanor (Mrs. Sylvester) Connor, Bonnie (Mrs. Melvin) Fuller, Evalena E. (Mrs. Reuben M.) Harris, Donna (Mrs. Joseph D.) Ryan, Elbertia O. (Mrs. David K.) Smoker, Elaine H. (Mrs. Carl F.) Steinbaugh, Cynthia D. (Mrs. Stanley G.) Stuckey, Ruth (Mrs. Raymond) Vandermark, Appellants,

v.

PITTSBURGH CORNING CORPORATION, PPG Industries, Inc., Charter Consolidated Ltd., Cape Asbestos Fibres Ltd., Cape Asbestos South Africa Proprietary Ltd., Egnep (PTY) Ltd. Amosa, Ltd., Charles G. Morgan, Geofrey Higham, Dr. Richard Gaze, Cape Board & Panels Ltd., W.B. Arnold Co., Charter Consolidated Investments, Ltd., Central Mining Finance, Ltd., Charter Consolidated Services, Ltd., British South Africa Co., Ltd., Consolidated Mines Selection Co., Ltd., Transvaal Consolidated Land & Exploration Company, Ltd., X, Y and Z Corporations

v.

COMMONWEALTH of Pennsylvania and American Flint Glass Workers Union, AFL–CIO.

Robert FORTNER, Donald Fortner, Marietta E. (Mrs. Donald) Fortner, Otis J. Carl, Ramsey Dalaba, Gary L. Daugherty, Joseph Finster, Bessie Painter, Richard Yentzer, Minnie J. (Mrs. Otis J.) Carl, Gertruse (Mrs. Ramsey) Dalaba, Helen P. (Mrs. Gary L.) Daugherty, Ernestine (Mrs. Joseph) Finster, Hazel B. (Mrs. Richard) Yentzer, Leroy W. Earle, Peter P. Pesock, Jerry N. Ludwig, James A. Tilley, Ruberta A. (Mrs. Leroy W.) Earle, Betty W. (Mrs. Peter P.) Pesock, Jacqueline C. (Mrs. James) Tilley, Richard F. Barth, Grace H. (Mrs.

248

Richard F.) Barth, Darrel F. Van Sickles, Donna (Mrs. Darrel F.) Van Sickles, Appellants,

v.

PITTSBURGH CORNING CORPORATION, PPG Industries, Inc., Corning Glass Works, Inc., Charter Consolidated, Ltd., Cape Industries, Ltd., Cape Asbestos Fibres, Ltd., Cape Asbestos South Africa Proprietary Ltd., Egnep (PTY) Ltd., Amosa Ltd., North America Asbestos Corporation, Charles G. Morgan, Geoffrey Higham, Dr. Richard Gaze, Cape Board & Panels, Ltd., W.B. Arnold Co., Charter Consolidated Investments, Ltd., Central Mining Finance Ltd., Charter Consolidated Services, Ltd., British South Africa Company, Ltd., Consolidated Mines Selection Company, Ltd., Transvaal, Consolidated Land & Exploration Company, Ltd., X, Y and Z Corporations

v.

COMMONWEALTH of Pennsylvania, and American Flint Glass Workers Union, AFL–CIO.

Lois YENTZER, Administratrix of the Estate of Ronald Yentzer, Deceased, Appellant,

v.

PITTSBURGH CORNING CORPORATION, PPG Industries, Inc., Dr. Lee B. Grant (Individually and as Medical Director of PPG Industries, Inc.), Charter Consolidated, Ltd., Charter Consolidated Investments, Ltd., Cape Industries, Ltd., Cape Asbestos Fibres, Ltd., and North American Asbestos Corporation.

James A. RINAMON and Dorothy Rinamon, Appellants,

v.

PITTSBURGH CORNING CORPORATION, PPG Industries, Inc., Charter Consolidated, Ltd., Charter Consolidated Investments, Ltd., Cape Industries, Ltd., and Cape Asbestos Fibres, Ltd.

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed July 23, 1987.

See also 317 Pa.Super. 285, 464 A.2d 323.

George H. Cohen, Pittsburgh, for appellants.

Gerald C. Paris, Pittsburgh, for appellees.

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

BROSKY, Judge:

This is a consolidated appeal from orders granting appellee's motion for summary judgment and dismissing appellants' complaint.

Appellants are present or former employees of appellee, Pittsburgh Corning Corporation, and spouses of these employees and have alleged in their complaint that they or their spouse suffer from asbestosis which was intentionally inflicted upon them by appellee. The action seeks damages for personal injury and loss of spousal consortium.

The trial court, in a lengthy opinion, sets forth its reasons for granting appellee's motion concluding that the Occupational Disease Act precludes any tort action against an employer for the contraction of an occupational disease including one for an intentional tort. Hence, we are called upon to decide whether an employee is precluded by the provisions of the Occupational Disease Act from bringing an action for an intentional tort against an employer, an issue which has heretofore escaped decision by an appellate court of this Commonwealth.

For the reasons set forth below, we reverse the order appealed from and remand to the trial court for proceedings consistent with this opinion.

## I.

The question of whether or not Worker's Compensation and/or Occupational Disease Acts possessing the commonly found exclusivity provisions preclude actions by employees against employers for intentional infliction of injury is one which has brought forth both conflict and debate in many jurisdictions. In this Commonwealth, the debate or conflict has arisen, at least in part, from the actual wording in the statute. The so-called exclusivity provision of the Occupational Disease Act, 77 P.S. § 1403, states:

Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any

disability or death resulting from occupational disease, or to any method of determination thereof, *other than as provided in article three of this act....* [Emphasis added].

However, 77 P.S. § 1401(a), which section in part of article three, states:

When employer and employe shall by agreement, either express or implied, ... accept the provisions of ... this act, compensation for disability or death of such employee, caused by occupational disease, arising out of and in the course of his employment, shall be paid by the employer, *without regard to negligence,* according to the schedule contained in [the Act].... [Emphasis added].

Supporters of the absolute exclusivity point to § 1403 and argue that this section requires preclusion of all tort actions, even those for intentional torts. Others point to § 1401(a) and argue that had the legislature intended to completely bar all common law actions including an intentional tort action they would have utilized the language "without regard to negligence or intent." Appellate courts of this Commonwealth have provided guidance, either in related holdings or in dicta, but have not definitively answered the question under the occupational disease act.

The case of *Readinger v. Gottschall,* 201 Pa.Super. 134, 191 A.2d 694 (1963), decided by a panel of this court, did consider this issue under the Workmen's Compensation Act. In that case an action was brought by an employee against an employer for conduct which was tantamount to a deliberate assault by the employer upon the employee. This court found that the exclusivity clause of the Workmen's Compensation Act did not bar or preclude an action for an intentional tort. We analyzed there that an intentional tort could not be thought of as an "accident," which was an operative word under that version of the act providing for compensation to employees injured by an accident occurring in the course of employment, and consequently found such an action without the scope of the act. Subsequent to the *Readinger* decision the Workmen's Compensation Act was

amended and no longer contains the "accidental" language relied upon in *Readinger*, hence leading some to question the ongoing validity of the *Readinger* decision. We do not feel that the issue can be disposed of nor be given its due regard by relying simply upon a single word of the statute. Nor does the court wish to engage in a semantical game where at issue is the intent of the legislature or the judicial interpretation of a legislative enactment. Rather, we find it more appropriate in determining the issue before us to consider the nature of the legislation in question, its purpose and effect.

What appears to be generally undisputed is that passage of the Workmen's Compensation and Occupational Disease Acts was an element of social and industrial reform intended to provide a certain basis of recovery for injured employees. Prior to passage of these acts an injured employee, like any injured individual, had recourse to the courts and common law actions but like in any action for personal injury, was required to establish legal responsibility and liability prior to recovery. After passage of the Acts any employee injured in the course of employment had the right to compensation under provisions of the applicable act without having to prove fault. Apparently the legislature was more conscious of injury occurring by trauma or "accident" in drafting the original Workmen's Compensation Act as it employed that language which resulted in courts construing that statute as not encompassing occupational disease. Consequently, in 1939, the Occupational Disease Act was enacted to provide relief for individuals stricken with such injuries. From that point on, an injured worker had recourse to the compensatory scheme of the appropriate statute regardless of whether injury resulted from accident or exposure to one of the enumerated dangerous substances found in the Occupational Disease Act. The distinction between injury as a result of trauma and occupational disease was effectively eliminated in the 1972 amendments to the Workmen's Compensation Act with 77 P.S. § 411 being redrafted to encompass all injury arising in the

course of employment whether caused by trauma or an occupational disease.[1]

As a reformative measure, the passage of these acts has been often referred to as a trading off of certain features of tort litigation.[2] The employee gives up his right to sue in court while being awarded a more certain recovery. The employer gives up his right to be found faultless, and therefore not liable, while also enjoying a limited liability.[3] Hence, assuming the legislature intended to provide more certain protection to employees without imposing an overwhelming financial burden upon employers, relieving an employee from showing fault while limiting recovery would seem to balance these interests well. However, it does not logically follow that a reformative measure designed to maximize compensable injuries at a workable cost was also contemplated to provide an absolute shield to tort liability or to encourage, or at least allow, reprehensible intentional wrongdoing reasonably calculated to lead to severe personal injury or death of employees. If the passage of the Workmen's Compensation and Occupational Disease Acts are thought of as humanitarian reform designed to benefit workers overall, it cannot be thought of as a shield against liability for the intentional infliction of harm by an employer. Nor is there any indication that it was meant to be.

As previously indicated, no appellate court of this Commonwealth has held that either the Workmen's Compensation Act or the Occupational Disease Act shields an employer from liability for harm intentionally inflicted upon an employee.[4] The Act itself indicates that when death or

1. The Occupational Disease Act only addresses certain enumerated occupational diseases. Post 1972 occupational diseases would be covered under one of the two acts, at least, and possibly under both.

2. For example, see, *Wagner v. National Indemnity Company,* infra.

3. In this respect perhaps the proper focus of attention is not whether the Occupational Disease Act allows an employee to bring an action for intentional tort against his employer but whether the passage of that Act was intended to take such an action away from the employee.

4. Although certain cases might appear to have held so, upon closer scrutiny they have not truly done so. (But, see the dictum in *Poyser v.*

diability is caused by occupational disease arising out of and in the course of one's employment, compensation shall be paid by the employer, without regard to negligence, as per the schedule in the act. As posed earlier, it is logical, but

*Newman & Company,* discussed more fully in footnote 8, infra.) *Evans v. Allentown Portland Cement Company,* 433 Pa. 595, 252 A.2d 646 (1969) and *Higgins v. Clearing Machine Corporation,* 344 Pa.Super. 325, 496 A.2d 818 (1985), discussed more fully infra, have dealt with situations where knowing disregard of statutory safety regulations was alleged. Both cases found the Workmen's Compensation Act an exclusive remedy. Although both cases contained allegations of intentional wrongdoing of the employer, neither case found the employer had "intended" the injurious result. This may seem to be an overly technical distinction but it is a key one. A man in a rural neighborhood may decide to target shoot with a rifle in his backyard in violation of a local safety ordinance. If a bullet ricocheted off a rock and struck an individual out of sight he would not have committed an intentional tort even though he intended to fire and the firing of the rifle was wrongful. If, however, a group of individuals had been walking behind the rifleman's target and he fired anyway disregarding the group's safety and one of the group was struck, he quite possibly would be found liable by a jury for intentional tort for the jury could find that there had been a substantial certainty that one of the group would be struck. Therefore, he would have legally "intended" the injurious result even if he had not desired that it come about.

In the context of industry, employers make conscious decisions and take "intentional" actions every business day. Some of these may prove unwise and some may prove even a bit unsafe. However, this is common to some degree in the work place and does not mean that a resultant injury was "intended". Most likely this was recognized by our legislature, (as most likely was the fact that no matter how cautious employers are some injuries are likely to occur), and was meant to be "forgiven", in the sense that compensation would be payable under the provisions of the Act and the employer would not be subjected to a personal injury action and unlimited liability despite the fact that injury may have resulted from a less than prudent decision. However, it does not necessarily follow that the legislature intended to immunize an employer from tort liability when he knowingly engages in conduct which is substantially certain to cause injury. Such a reading could literally work to immunize an employer who commits murder from tort liability and could also provide an employer incentive to intentionally disregard safety standards and precautions even though injury or death is certain to result therefrom. Consequently, in this context it becomes apparent that allegations that, or a holding that, an employer wilfully disregarded safety regulations which increased the risk of the harm actually sustained does not necessarily indicate that an employer has committed an intentional tort. In fact, when stated in such a manner, it sounds extremely similar to the substantial factor test of causation recognized in a negligence action.

perhaps not necessary, to assume that had the legislature intended to limit an employee to the compensation schedule of the act when his injury is intentionally inflicted by the employer, they would have added the language "or intent" to "without regard to negligence". The Act itself mentions intentional infliction of harm in only one section, at 77 P.S. § 1305, which was added to the original act in 1963. Section 1305, in essence, extends the "statutory immunity" features of the Occupational Disease Act to fellow employees. Under this section an injured employee could not, after his injury being found compensable under the Act, subsequently sue a fellow employee for his injury *unless intentionally inflicted by the fellow employee.* This reflects an intent to protect an employee from liability for his negligent infliction of harm upon a fellow employee while retaining his legal culpability and liability if the harm is intentionally inflicted. In our opinion, this reflects the legislature's general intention or understanding that the Act should not operate as a shield against liability for intentional infliction of harm.

Appellee and the trial court argue that the fact that intentional harm is specifically excluded in § 1305 and is not otherwise or elsewhere addressed to the employer, indicates an intention of the legislature to shield the employer from such liability. We are not convinced by this argument. Section 1305 was added 24 years after the Occupational Disease Act was enacted and addresses a specific class of individuals, fellow employees. It would not be logical for the legislature to address employer liability or immunity in this section. Nor is it expected that our legislature would make wholesale revision of a statute where no problem in its application is perceived. Consequently, we will not infer a legislative intent to provide wholesale immunity to one class of individuals, employers, simply because the legislature chose, at a later date, to add a section granting a limited immunity to an entirely different class of individuals, employees, but did not otherwise clarify the existing immunity provisions.

Similar argument has been advanced by appellee regarding the 1972 amendments to the Workmen's Compensation Act.[5] As previously indicated, our holding in *Readinger v. Gottschall,* supra, found that the Workmen's Compensation Act did not preclude a suit against an employer for an intentional tort. In that opinion, our analysis focused on the usage of the word "accident" and found intentional injury was not "accidental," and consequently, that the act did not preclude such an action. In 1972, amendments to the Workmen's Compensation Act were drafted which resulted in the deletion of the "accident" language. Appellee would have us believe that the legislature, by such action, intended to eliminate the "intentional tort exception" which *Readinger* had created.[6] As in appellee's preceding argument, we are unconvinced by this argument as well. A review of the 1972 amendments indicates the legislature intended to expand coverage of the Workmen's Compensa-

5. Throughout the first part of this Opinion we analyze both the Workmen's Compensation Act and Occupational Disease Act as we find that, although addressing different types of injury, they are similar in nature and intent and therefore developments and decisions under both are relevant in deciding the issue before us.

6. The language "intentional tort exception" appears in quotes because the *Readinger* decision and the issue before us are commonly referred to in this manner and have been referred to in this manner by the trial court and appellee. However, as previously alluded to, this is a somewhat misleading characterization of that decision and the issue itself. The right of an employee to sue an employer is a right which existed unconditionally prior to the passage of the Workmen's Compensation and Occupational Disease Acts. Passage of these acts affected the employee's right to sue to a degree which is still being judicially determined. However, a more accurate description of our *Readinger* holding is that the passage of the Workmen's Compensation Act did not bar or take away the employee's right to recover in tort for injury intentionally inflicted by the employer. Consequently, in *Readinger* we did not, in logical reality, "carve out" an exception to the exclusivity provisions of the Act. Rather, we began to define the extent to which that provision affected an employee's previously unconditional right to sue in tort.

We express no opinion as to the ongoing validity of the *Readinger* decision in light of the Supreme Court's recent decision in *Poyser v. Newman & Company,* see footnote 8 infra. Nor do we rely on that case in reaching the decision made here. Rather, we find *Readinger* and subsequent cases which discuss this issue instructive on the matter but not dispositive of our decision.

tion Act to encompass all injury arising out of and in the course of employment, whether caused by trauma or occupational disease. As the word "accident" did not, in common understanding and by judicial interpretation, encompass occupational disease, it was deleted. There is no express intent exhibited by the legislature that its action was designed to counteract the *Readinger* holding or to otherwise provide an intentional tort immunity to employers. Furthermore, we find it difficult to believe that had the legislature possessed that intent it would have taken these steps to accomplish it. We believe instead that had the legislature intended to effectively overrule our *Readinger* decision and undergo a statutory revision to effectuate such intent, and in view of the labor such a revision entails, it would have provided explicitly that an employer was immune, under the Act, from an intentional tort action.

The ongoing validity of this position seems to be borne out by our Supreme Court's language as well. In *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158, 160 (1983), eleven years after the 1972 amendments, our Supreme Court, in discussing the constitutionality of the Act's exclusivity provision, stated "the workmen's compensation law does not address losses incurred by intentional injury by employee or employer." Although this was not a holding of the court, the language used by the court in discussing the exclusivity provision is far from equivocal and cannot be ignored. Other statements by our Supreme Court and this Court also support an ongoing validity of this position.

In *Tsarnas v. Jones & Laughlin Steel Corporation*, 488 Pa. 513, 519, 412 A.2d 1094, 1097 (1980), our Supreme Court stated:

> Indeed, the United States Supreme Court has consistently held that the purpose of this kind of legislation was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort for *negligence.* (Emphasis added).

Immediately preceding this language in *Tsarnas* appears language of this court quoted from *Hefferin v. Stempkowski*, 247 Pa.Super. 366, 372 A.2d 869 (1977), discussing recommendations from the National Commission on State Workmen's Compensation laws, which in relevant part states:

Recommendations R 2.18 and R 2.19 address immunity and exclusivity of employers from negligence actions when an employee is impaired or dies because of work related injury or disease.

In *Wagner v. National Indemnity Company*, 492 Pa. 154, 422 A.2d 1061 (1980), our Supreme Court stated with regard to both the Workmen's Compensation Act and Occupational Disease Act that:

both the employer and employee relinquished certain rights to obtain other advantages. For the worker, he no longer had to prove negligence; in return the employee had to accept a limited, though certain, recovery. The employer, on the other hand, guaranteed compensation to an injured employee in return for the exclusivity of the workmen's compensation liability to its employees.

Additionally, a recent panel decision of this court affirmatively stated that the exclusive protection provided by the Workmen's Compensation Act does not exclude an action for an intentional tort. *Jones v. P.M.A. Insurance Company*, 343 Pa.Super. 411, 495 A.2d 203 (1985). More recently, this Court sitting en banc has stated that an action by an employee can lie against an employer if the employer has harmed its employee through an intentional wrongful act. *Boris v. Liberty Mutual Insurance Company*, 356 Pa.Super. 532, 515 A.2d 21 (1986).

We lastly address appellee's argument, one which is frequently made in circumstances such as these, that to "carve out a judicially-created intentional tort exception" to acts like the Workmen's Compensation and Occupational Disease Act usurps the legislative function. We cannot agree. We are called on here to decide whether passage of the Occupational Disease Act precludes an action by the

employee against the employer for intentional tort. We cannot escape the issue before us. Consequently, our decision and interpretation of the statute will govern until overruled by our Supreme Court or effectively overruled by legislative amendment.

When a statute is not explicit on an issue, as is the case here, we frequently attempt to effectuate "legislative intent". If, as is also the case here, we believe that our legislature would not have intended a certain result, we are not serving them by abstaining from so holding due to a misguided fear of usurping their legislative role. For by so abstaining we give effect to the opposite intent. Consequently, if we believe that our legislature would not, and did not, wish to immunize an employer when it intentionally harms its employees we must so hold. Or alternatively, if we believe the legislature did not really contemplate this issue when drafting the Act we must credit them by providing a just interpretation to their enactment rather than allow unjust results to continue until such time as they can rectify the situation by amendment. If we improperly perceive or estimate the legislature's intent, we trust they will amend the statute to explicitly indicate so. However, in the meantime, at least we have attempted to provide a just result and a just interpretation of the legislature's enactment and, certainly, this cannot be faulted.

Consequently, in light of the various statements made by this Court and our Supreme Court and our understanding of the legislative intent of these compensatory statutes, we are compelled to hold that the Occupational Disease Act does not preclude a suit by an employee against the employer for an intentional tort.

## II.

Having found that the Occupational Disease Act does not preclude the type of suit in question here, and as the trial court relied on this fact in granting summary judgment, we must determine if the entry of summary judgment in favor of appellee was proper for other reasons.

It is axiomatic that entry of summary judgment is proper where there exists no dispute as to material facts and the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035.

However, here there is a dispute as to the intention of appellee which is a material fact. Accordingly, we cannot affirm the entry of summary judgment unless the facts and allegations of record, and all reasonable inferences therefrom, are insufficient as a matter of law for a reasonable jury to find that appellee committed an intentional tort.

■ Appellants allege, in their complaint and their brief, that appellee knowingly exposed the appellants to asbestos dust and fibers in quantities that far exceeded the currently accepted safety levels; that the exposure to asbestos was substantially certain to result in the exposed individual's contraction of asbestosis and other related injurious diseases; that appellee knew appellants were substantially certain to contract asbestosis and in fact many were exhibiting signs of having contracted that disease and failed to take adequate precautions and, also, that it misrepresented the dangerous nature of the working conditions to appellants.

Additional facts gleaned from various depositions indicates that in 1962, two years prior to the date appellee started the production of unibestos, they were provided with medical literature outlining the threshold limits of asbestos exposure and indicating that prevention of asbestosis depends entirely upon preventing exposure to concentrations above the threshold limits. The chief scientist at Cape Industries specifically informed appellee's management that asbestos was dangerous to human health and that specific precautions must be taken to protect workers. A few months after operations were underway at appellee's plant, appellee was informed by the Commonwealth's Health Department that the asbestos dust levels substantially exceeded the threshold limit. Subsequent to this, one of appellee's managers was sent to Cape's manufacturing plant in England to study asbestos dust controls and found that Cape

had previously lost a predictable number of employees to the contraction of asbestosis and related diseases. To deal with the problem Cape had instituted controls in its plants to encapsulate dust producing processes and reduce airborne concentrations of dust.

Based on findings from the trip to England, appellee's engineers drew up an engineering report to implement engineering controls comparable to Cape's at a projected cost of $180,000. A statement at deposition by the work manager indicated that, from the report, it was clear that when exposed to such quantities of asbestos dust employees "would eventually contract asbestosis." A meeting took place with appellee's president in which adoption of the engineering controls was urged by managers working at plant 8. However, the reported response from the president was negative as appellee was "losing money." Furthermore, certain of the appellants indicated that appellee's managers, at different times, assured them that there was no health risk as a result of being exposed to the asbestos.

In the context of tort litigation intent has been defined thusly:

'Intent' is the word commonly used to describe the desire to bring about the physical consequences [of an act] ... Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does. Prosser, Law of Torts, § 8 at 31 (4th ed. 1971).

Likewise, the *Restatement of Torts 2d*, § 81 (1965), defines "intent" as follows,

"the word 'intent' ... denote[s] that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it."

Furthermore, the Comments to Section 8A describe the relationship between "intentional" wrongdoing and "recklessness" as follows:

If the actor knows that the consequences are certain, or *substantially certain,* to result from his act, and still goes ahead, *he is treated by the law as if he had in fact desired to produce the result.* As the probability that the consequences will follow decreases, and becomes less than *substantial certainty,* the actor's conduct loses the character of intent, and becomes *mere recklessness,* as defined in § 500. Comment b, § 8A, (emphasis added).[7]

The above excerpts from Prosser and the Restatement of Torts provide some of the better explanation of intent in the body of tort law and allow analysis of the issue here. In light of these excerpts we cannot find that an issue for the jury is non-existent, nor can we find that, as a matter-of-law, appellee was without the requisite intent to impose liability.

There is evidence of record which would allow a jury to find that appellee knew that its employees were exposed to excessive levels of asbestos dust and fibers, knew and believed that employees exposed to these levels of dust were substantially certain to contract asbestosis and related carcinoma and despite this knowledge, continued to operate its plant without taking adequate measures to reduce the exposure to asbestos dust while assuring its employees that there was no health risk due to the exposure.

Consequently, while it is possible that a trial by jury will result in the painting of a different picture than that presented by appellants, we would be improperly invading the province of the fact finding body if we were to hold here that, as a matter of law, appellee did not possess the requisite intent or that an issue of material fact did not exist. Nor do we find that our decision today conflicts with previous decisions of our appellate courts.

Appellee and the trial court have pointed out certain decisions which they believe mandate affirmance of the order in question. In one of these, *Evans v. Allentown Portland Cement Company,* 433 Pa. 565, 252 A.2d 646

7. This language is quoted in *In re Turner,* 44 Pa.Cmwlth. 326, 403 A.2d 1346 (1979).

(1969), our Supreme Court stated "that even where neglect of a statutory duty is alleged, the employee's only remedy is under the Workmen's Compensation Act." In that case the plaintiff alleged that the decedent's employer had operated an electrically powered conveyor system without safeguards required by law and that plaintiff's decedent met his death as a result thereof. As our Supreme Court noted, the plaintiff's complaint in that case further alleged that because of the employer's unlawful activity plaintiff was not bound by the Workmen's Compensation Act. The Supreme Court disagreed making the commentary quoted above.[8]

8.  This position was recently upheld by our Supreme Court in *Poyser v. Newman & Company, Inc.*, 514 Pa. 32, 522 A.2d 548 (1987). Similar to the statement used in *Evans* the Court said it granted allowance of appeal to consider whether appellant's asserted ground for tort recovery, that his injury was caused by deliberate derelictions of the employer, operated to take the action out of the exclusivity provision of the Workmen's Compensation Act. The Court concluded that it did not. As that decision interprets provisions of the Workmen's Compensation Act which differ, to some degree, from those found in the Occupational Disease Act and does not find that the employer's conduct rose to the level of intentional tort, we do not believe it affects our determination here.

Upon review of the *Poyser* opinion, it is apparent that some critical factors in the court's determination in *Poyser* are not applicable here. First the exclusivity sections of the respective statutes, although similar, are not identical. The "exclusivity section" of the Occupational Disease Act, 77 P.S. § 1403 makes reference to other sections of that article where it states "other than as provided in article three of this act." This requires that the different sections be read in conjunction with one another. The acceptance section, 77 P.S. § 1401(a), states that compensation for injury shall be paid by the employer "without regard to negligence." Although not conclusive on the issue, the legislature's failure to state "without regard to negligence or intent" at least opens to debate the question of what happens if there is evidence of intentional infliction of harm. It does not appear reasonable to argue that these provisions evidence an *explicit intent* of the legislature to take away an employee's right to sue for intentional tort, and it is entirely possible that the legislature did not contemplate intentional tort actions at all when it passed the original act.

In contrast, the Workmen's Compensation Act has an "exclusivity section" which is self contained and does not make reference to other sections of the Act. Consequently, while the Workmen's Compensation Act has similar "without regard to negligence" language in its acceptance of provisions section, its exclusivity provision does not make reference to other sections of that Act and does not require that they be read together. Therefore, it may be appropriate to read the "exclusivity provision" of the Workmen's Compensation Act more

narrowly than that provision in the Occupational Disease Act, which specifically makes reference to other sections of the Act and requires reading that section in conjunction with the others.

Secondly, in a related vein, the Supreme Court in *Poyser* made much of the fact that the legislature had considered intentional wrong of fellow employees and third persons in the Workmen's Compensation Act while not addressing intentional wrong of employers, and interpreted this to mean that the legislature had not intended that an employee's right to sue for intentional infliction of harm by an employer had survived passage of that Act. (Note that the "fellow employee" section of the Workmen's Compensation Act was added in 1963 and not contained in the original act.) In contrast, the original version of the Occupational Disease Act did not address intentionally caused harm. Only upon the addition of 77 P.S. § 1305, also in 1963, which deals with fellow employee liability, did the Act discuss intentionally caused harm or intentional wrong.

Consequently, while we have no quarrel with the inference drawn by our Supreme Court from the language of the Workmen's Compensation Act we cannot draw from the non-existence of language in the Occupational Disease Act the same inference of legislative intent that our Supreme Court drew with regard to the Workmen's Compensation Act; and, as noted in the text of our opinion, we do not believe the addition of § 1305 some 24 years after passage of the original Act warrants a negative inference that the legislature intended to extend, at that time, immunity to an employer from an intentional tort action. Had the legislature possessed such intent, we believe they would have explicitly provided so.

Thirdly, in *Poyser*, as pointed out in Justice Larsen's dissenting opinion, the majority found that the employer's conduct did not rise to the level of intentional tort and there is no discussion of allegations that the employer intentionally harmed Poyser, only that the employer intentionally disregarded safety precautions. As indicated in footnote 4, supra, although subtle, this is an important distinction. The key to an intentional tort action is that there exist an intent to injure. The "intentional" disregard of safety regulations may constitute evidence of an "intent" to injure, however, it does not necessarily constitute an intent to injure. The present case differs in that it considers allegations of this sort and, for purposes of deciding the scope of the exclusivity provision, assumes that "intent" to injure existed as defined in our body of tort law.

Fourthly, although, as pointed out by our Supreme Court, some of our sister states have allowed intentional tort actions by employees against employers pursuant to specific provisions in their Acts, at least two of our sister states, Illinois and Ohio, have allowed intentional tort actions despite exclusivity provisions similar to ours. The Supreme Court of Ohio, in *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), considered the viability of an intentional tort action under the Ohio Act which provided that employers shall not be liable to respond in damages at common law or by statute for any injury or occupational disease received or contracted by any employee in the course of his employment. The Ohio Supreme Court found that the Act did not expressly extend employers immunity from intentional tort actions and found

In another, *Higgins v. Clearing Machine Corporation,* 344 Pa.Super. 325, 496 A.2d 818 (1985), a panel of this Court found *Evans* controlling and affirmed an order sustaining preliminary objections in the nature of a demurrer. There it was alleged that appellant was injured while operating a punch press which was inadequately guarded according to OSHA regulations and that there were at least two prior

that the purpose of the Act did not encompass shielding employees from that form of liability. They stated:

> Indeed, workers' compensation Acts were designed to improve the plight of the injured worker, and to hold that intentional torts are covered under the Act would be tantamount to encouraging such conduct, and this clearly cannot be reconciled with the motivating spirit and purpose of the Act.

433 N.E.2d at 577.

In a similar vein, the appellate court of Illinois in *Handley v. Unarco Industries, Inc.,* 124 Ill.App.3d 56, 79 Ill.Dec. 457, 463 N.E.2d 1011 (1984), considered an action by employees against employer for injury due to exposure to asbestos. Similar to this case the allegatrions in *Handley* indicated that the employer knew that exposure to asbestos dust could and would cause disease and/or death yet withheld this information from employees while representing to them that exposure was not harmful. The Court indicated that while it remained to be seen whether the plaintiffs could prove thcir allegations they would not construe their statute to provide the employer immunity from an intentional tort action. The exclusivity provision stated that there was no right of the employee to recover from the employer for injury or disease other than the compensation provided in the statute. The Court went on to state:

> The Workers' Occupational Diseases Act, establishes a system of liability without fault, and abolished traditional defenses available to the employer in exchange for the prohibition against common-law suits by employees, but we are not persuaded that this legislative balance was meant to permit an employer who encourages, commands, or commits an intentional tort to use the act as a shield against liability by raising the bar of the statute and then shifting liability throughout the system on other innocent employers.

79 Ill.Dec. at 469, 463 N.E.2d at 1023.

Even the Supreme Court of Connecticut, while deciding the issue under their statute in apparent contrast to the Ohio Supreme Court, made the following express holding, "the common law liability of the employer cannot, ... be stretched to include *accidental* injuries caused by the gross, wanton, wilful, deliberate, intentional ..." conduct of the employer. (emphasis added) *Mingachos v. CBS, Inc.,* 196 Conn. 91, 491 A.2d 368, 378 (1985). Of course, if the injury is found *accidental* then it could not bring rise to an intentional tort action even if caused by intentional conduct. See footnote 4 supra. Consequently, as we do not find *Poyser* controlling our decision here we do find comfort in the fact that other respected courts have come to a conclusion similar to ours while interpreting very similar provisions.

incidents of injury to press punch operators at this plant resulting from a lack of appropriate safeguards. The complaint further alleged that appellants' injury was the result of the employer's "intentional, wanton and willful" conduct. This court, quoted the *Evans* language that even when neglect of statutory duty is alleged the employees' remedy remains under the Workmen's Compensation Act.

The distinction between *Evans, Higgins* and the present case is that the two former cases, although involving allegations of regulatory violations, did not *allege* conduct sufficient to meet the level of intent necessary to impose intentional tort liability. Consequently, in both cases the complaints were dismissed for failure to state a cause of action. However, as the excerpts from the Restatement of Tort indicated, there is a point where conduct of an individual rises to a level of culpable intent even though perhaps the actor did not actually "desire" the result received. The *Evans* opinion never discusses intent or the theory of intentional tort only neglect of a statutory duty. On the other hand, *Higgins* discusses *Evans* and provides the key distinction to the case *sub judice* that the employees' death in *Evans,* despite the statutory violation, was still presumptively accidental. Likewise, the decision in *Higgins* hinged upon essentially the same criterion as this court stated "[n]o allegation is made that Kelsey-Hayes intended to injure Higgins." 496 A.2d at 818. Here, however, it is argued extensively by appellant that appellee "intended" to injure appellants as that term has been legally defined in the large body of tort law and, as discussed earlier in this opinion, have presented sufficient evidence to present an issue for the jury. While *Evans* and *Higgins* involved alleged willful violation of safety regulations, there is no indication that this created a situation where injury was either desired or substantially certain to occur nor was the same alleged. Consequently, the allegations regarding intent were insufficient. In the present case it appears established that individuals exposed to excessive levels of asbestos dust and fibers for an extended period of time are substantially certain to contract asbestosis or other injuri-

ous symptoms. Thus, the appellants here have overcome the pitfall found in both *Evans* and *Higgins*. Accordingly, we do not find a conflict between *Evans, Higgins* and the present case.

As we find that the Occupational Disease Act does not preclude an action for intentional tort, and as we find that sufficient evidence exists to present a triable issue, we find the granting of summary judgment was erroneous. Accordingly, we reverse the orders appealed from.

Orders granting summary judgment reversed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

With great deference to my colleagues, the Majority, I dissent. I believe that under the controlling language of our recent Supreme Court case, *Poyser v. Newman and Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (1987), we must conclude that an employee is barred from advancing an intentional tort action against his/her employer under the Occupational Disease Act (hereinafter referred to as the "ODA").

In *Poyser*, our Supreme Court recognized that some sister states have held that their workmen's compensation statutes' exclusive remedy provisions are inapplicable with respect to intentional tortious conduct committed by an employer against an employee. *Id.*, 514 Pa. at 37–38, 522 A.2d at 551. However, the *Poyser* court illuminated a sharp contrast between those states' statutes and the Pennsylvania Workmen's Compensation Act (hereinafter referred to as the "WCA"). Specifically, those cases in which an employee was permitted to sue the employer were grounded upon provisions in the workmen's compensation statutes "which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing." *Ibid.* No such provision exists under this Commonwealth's "WCA".

By that Opinion, the *Poyser* court set out an interpretative process by which I believe this court is constrained to

follow in construing the "WCA" and similar statutes. That is, unless explicitly preserved under the terms of the Act, an employee is barred from bringing actions that are not provided for as remedies under the Act.

In analyzing the issues before it in that case, the *Poyser* court first looked to the "WCA's" very terms. It was concluded that in devising the statute the legislature was mindful of the issue of intentionally caused harm but chose to narrowly proscribe the types of actionable intentional torts. This is evidenced by 77 P.S. § 411(1) which provides that an injury inflicted by a third person intended to injure an employee does not fall within the statutory definition of a covered injury. Further, 77 P.S. § 72 expresses an exception for the intentional infliction of harm caused by an employee against a fellow employee. From this it was held that the legislature did not intend to carve out an exception for intentional tort actions brought by an employee against his/her employer. With this analysis in mind, I turn to the terms of the "ODA".

As can be readily determined, the exclusivity clause of the "ODA" is strikingly similar to that of the "WCA". *See* 77 P.S. §§ 1401, 1403. Likewise, the "ODA" contains an identical exception from the Act for intentional tortious conduct by one employee against a fellow employee that is found in the "WCA". *See* 77 P.S. § 1305. Insofar as the two statutes are similar in nature, I believe that *Poyser* is dispositive of the manner in which we are to decide whether or not the legislature intended to permit an employee to sue his/her employer for intentional harm under the "ODA".

The starting point under *Poyser* is to operate from the premise that, unless a cause of action has been expressly preserved, the employee's sole remedies for injuries sustained are found in the "ODA". As a matter of observation, the "ODA" simply does not contain a provision for the type of action the Majority would allow. The next step, therefore, is to determine whether or not the legislature was mindful of the issue of intentionally caused harm. This is done by examining the provisions of the Act. Under

§ 1305 of the "ODA", an employee is immunized from tort actions for harm caused to a fellow employee unless such harm is intentionally inflicted. From this portion of the statute, it is clear that the legislature recognized the potential for intentional tort actions under the "ODA" but did not make provisions to preserve for an employee the right to sue his/her employer for intentional wrong. Thus, under the *Poyser* directives, I am convinced that we must arrive at the conclusion that the legislature did not intend for such actions to be instituted by an employee.

I duly recognize the Majority's valiant attempt to distinguish the instant case from *Poyser*. Of a particular persuasive nature is the Majority's second argument which emphasizes the fact that § 1305 was added approximately 24 years after the original Act. The Majority does not "believe the addition of § 1305 some 24 years after the passage of the Act warrants a negative inference that the legislature intended to extend, at that time, immunity to an employer from an intentional tort action." (op., 499, n. 8).

However enticing it may be to follow this rationale, I remain unpersuaded of *Poyser's* nonapplicability for two reasons. First, the Majority's position that, had the legislature possessed an intent to preclude an employee's recovery from an employer for intentional wrong, it would have explicitly provided so runs contrary to the interpretative guidelines set out by *Poyser*. It bears repeating that *Poyser* operates from the presumption that the remedies provided for in the Act are exclusive unless other actions are preserved under the statute. This becomes abundantly apparent from our Supreme Court's historical analysis of the *quid pro quo* relationship between an employer and an employee in accepting a statutory no-fault system of compensation for worker injuries. *Id.*, 514 Pa. at 36, 522 A.2d at 550. Thus, the Majority's contention that, unless specifically precluded by the legislature, we cannot infer an intent to bar intentional tort actions brought by an employee against an employer does not comport with *Poyser*. *Poyser* calls

for the opposite approach: unless *explicitly preserved*, such actions are not permitted.

Second, the Majority aptly points out that only upon the addition of § 1305, 24 years after the inception of the "ODA", did the Act discuss intentionally caused harm. (op., 499, n. 8). The Majority's purpose in bringing this fact to light would be to infer that the inclusion of § 1305 after such a lapse of time does not demonstrate that the legislature was mindful of intentional harm, but chose not to grant to the employee the right to institute this type of action against the employer. It is true that the "ODA" did not originally discuss intentional torts. I am unconvinced, however, that we can ignore the fact that § 1305 was eventually added to the Act. The legislature did consider intentional torts in the realm of "ODA" coverage at one point, yet decided not to make similar provisions with respect to an employee versus employer action.

The validity of the "time lapse" argument is further weakened when the "WCA" is viewed from this perspective. Admittedly, § 411(1)'s provision in reference to third person intentional torts was contained in the original version of the Act. However, § 72, which forms an exception for intentional harm caused by fellow employees, was not added until 1963, nearly 50 years after §§ 481 and 411 were written. It is evident from *Poyser* that our Supreme Court did not view the time lapse as a mitigating factor in arriving at the conclusion that the legislature considered intentional torts, but did not intend the result the Majority reaches today. Thus, this argument must fail.

As a practical matter, I am in complete agreement with the manner of construing the exclusivity clause of the "ODA" which the Majority would adopt. I, too, would hold that an employee is not deemed to have waived his/her common law rights to sue an employer unless the "ODA" specifically bars a particular cause of action. Unfortunately, our Supreme Court has adamantly adopted the inverse approach of statutory construction. Therefore, it is remiss to ignore the mandate that we are constrained to follow.

Accordingly, I am of the opinion that, under the language of *Poyser*, we are compelled to hold that Appellants' lawsuit is barred by the "ODA". For these reasons, I must dissent.