B.T.Z., INC., an Illinois corporation, individually, on Behalf of all others similarly situated, and derivatively on behalf of JLG INDUSTRIES, INC., a Pennsylvania corporation, Plaintiffs,

v.

John L. GROVE, L. David Black, Charles H. Diller, Jr., Paul K. Shockey, H. Lyle Duffey, J. Robert Fries, E. Mason Hendrickson, James A. Mezera, Lawrence G. Wigbels, Charles O. Wood, and JLG Industries, Inc., a Pennsylvania corporation, Defendants.

Civ. A. No. 1:CV–92–900.

United States District Court, M.D. Pennsylvania.

Oct. 13, 1992.

**1020**

Luther E. Milspaw, Jr., Marvin Beshore, Harrisburg, Pa., David L. Lee, Law Offices of Frederic F. Brace, Jr., Chicago, Ill., for plaintiffs.

John McN. Cramer, Reed, Smith, Shaw & McClay, Harrisburg, Pa., William D. Iverson, W. Andrew Jack, David H. Resnicoff, Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

We are now considering defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). We will examine the motion under the well-established standard. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). Defendant seeks dismissal on various grounds. We will discuss them *seriatim*.

## I. DERIVATIVE ACTION DEMAND REQUIREMENT

### A. *Adequacy of the Demand*

■ Count I is a derivative claim brought by BTZ, Inc. ("BTZ"), an Illinois corporation that owns stock in JLG Industries, Inc. ("JLG"). BTZ seeks to enforce the rights of the corporation (JLG) against certain actions of its board of directors that BTZ claims breach the board's fiduciary duty.[1]

Defendants now argue that Count I fails to satisfy Fed.R.Civ.P. 23.1 and Pennsylvania law because it does not allege that a proper demand was made on JLG board members to address plaintiff's complaints.

Fed.R.Civ.P. 23.1 requires that plaintiffs in derivative suits "shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ..." This demand requirement is strictly enforced. *Kamen v. Kemper Financial Services*, —— U.S. ——, ——, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152, 164 (1991). The federal procedural rule gives little dimension to the requirement, because its purpose in "delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" *Id.* State law of the state of incorporation, then, will fill in the contours of the demand requirement. *Id.* JLG is a Pennsylvania corporation. Complaint at ¶ 4. Pa.R.Civ.P. 1506(a) is the state rule:

> (a) In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth
>
> .    .    .    .    .
>
> (2) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts ...

Courts have interpreted the Pennsylvania rule as requiring either a demand on the board of directors or an explanation of why a demand would be futile. *Lewis v. Curtis*, 671 F.2d 779 (3d Cir.1982). It is clear that questions of the adequacy of demands must be answered on a case-by-case basis.

> In order to determine whether a demand is adequate, the Court must look to its purpose. Since the directors are charged with the duty and responsibility to manage corporate affairs, if misconduct has

---

1. While our later discussion of the alleged breach of fiduciary duty will be dispositive of Counts I and II, we have examined the demand requirement and the direct standing issue because we believe it will clarify for the parties their rights and responsibilities in any future conflict.

occurred, they should be given the initial opportunity to redress the wrongs unless demand is excused. 'At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief.'

*Recchion, Westinghouse Elec. Corp. v. Kirby*, 637 F.Supp. 1309, 1318–19 (W.D.Pa. 1986) *quoting Allison on behalf of G.M.C. v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del.1985).

An examination of BTZ's letters to JLG's board reveals some specificity. On November 18, 1991, attorney David Lee, on BTZ's behalf, wrote a two-page letter to the JLG board making specific demands that the board consider a stock purchase offer from a group of investors represented by attorney Lawrence Orbe. The board replied to the first letter on December 3, 1991, by asserting that it had refused to meet with Orbe because he would not identify his clients and because several sources had cast doubt on the Orbe proposal. Unsatisfied, BTZ followed up its "demand" letter on December 6, 1991, and December 10, 1991. We believe the purposes of the demand requirement were satisfied in part by that correspondence. BTZ gave the JLG board an opportunity to address BTZ's concerns about the proposed takeover bid by Orbe's clients. The BTZ letters fulfilled the purposes of the demand requirement in the context of the takeover. The complaint, however, also asks that we order the board to rescind the alleged "golden parachute" stock option plan.[2] Plaintiff has failed to demonstrate that it made such a demand on the board prior to instituting the instant action and has, therefore, not complied with § 1506(a) in that regard.

### B. *Futility of the Demand*

■ Plaintiff argues that the inadequacy of its demand is irrelevant because a proper demand would have been ignored at any rate. Plaintiff contends that a demand

would have been futile because (1) the directors' financial and family interests constitute conflicts of interest and (2) a demand would have been asking the directors to sue themselves.

A demand may be excused if the members of the board of directors are so interested that they can not "determine fairly whether the corporate claim should be pursued." *Lewis, supra,* at 785. We find no allegation in the complaint that would justify an assumption that a demand would be futile because the board members were interested. Plaintiff merely asserts that board members receive some stipend for their services and that some have had business contacts with JLG. None of these allegations can overcome the strong preference for demands set forth in § 1506. Further, it is well-settled that failure to make a demand can not be justified by arguing that the directors would merely be suing themselves. *Lewis, supra,* at 785.

We find that the demand requirement of Fed.R.Civ.P. 23.1 and Pa.R.Civ.P. § 1506 was satisfied for the derivative suit of Count I, excepting that portion dealing with the "golden parachutes."

## II. STANDING TO BRING SUIT DIRECTLY

■ While Count I is a derivative claim brought on behalf of the corporation, Count II is a class action seeking to vindicate the rights of a class of JLG shareholders. Defendants argue that the Pennsylvania Business Corporation Law ("BCL") forbids such a direct suit by shareholders. Plaintiff counters that defendants misread the statute. We agree with defendants.

All of the actions that form the basis for plaintiff's claim occurred after 1990, which is crucial to this matter, because the Pennsylvania legislature amended the BCL effective April 27, 1990. The 1990 amendments in large measure seek to protect Pennsylvania corporations from takeover bids and, in so doing, give vastly greater discretion to boards of directors. *See,* Mi-

**2.** Plaintiffs allege that JLG has a stock incentive plan that would allow the directors to exercise stock options upon a "change of control" of the corporation. Plaintiffs call this plan a "golden parachute."

chael S. Marshall, Comment, *Beyond the Third Generation: An Analysis of Pennsylvania's Latest Attack on Hostile Takeovers* 29 Duq.L.Rev. 579 (1991). One of the provisions enacted in 1990 includes an enunciation of standing and its limitations.

> The duty of the board of directors, committees of the board and individual directors under section 1712 . . . is solely to the business corporation and *may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.*

15 Pa.Cons.Stat. § 1717 (1990) (emphasis added). Statutory analysis begins with the plain language of the statute. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In § 1717, the meaning is unambiguous. The Draftsmen's Comments to § 1717 underscore this language: "And a shareholder may not bring an action directly, but *only* in a derivative capacity, and would therefore be required to show the normal requisites with respect to such action." 2 William E. Zeiter, Pennsylvania Associations Code and Related Materials 190 (1991) (emphasis original).

Plaintiff attempts to dispute this interpretation of the statute by reference to *Wolf v. Young Supply Co.*, 19 Pa.D. & C.2d 404 (Del.Cy.C.P.1959). The citation to *Wolf* is flawed. *Wolf* only allowed direct shareholder actions in cases where the alleged wrong targeted a specific shareholder (e.g., where there was a refusal to allow a shareholder to inspect the corporate books, or where the board has conspired to cause a pecuniary harm to a particular shareholder). *Id.* at 408.[3] Plaintiff also cites *Keyser v. Commonwealth Nat'l Financial Corp.*, 120 F.R.D. 489 (M.D.Pa. 1988) (Nealon, C.J.). *Keyser* merely stands for the proposition that shareholders can simultaneously maintain derivative actions and direct actions to enforce their own

individual rights. Perhaps more important, both *Wolf* and *Keyser* pre-date the 1990 amendments to the BCL.

Plaintiff asks that we compel the JLG board to more readily evaluate takeover opportunities and rescind the "golden parachutes." These are, in reality, claims on behalf of the corporation as a whole. As such, plaintiff has no standing under the amended BCL to bring its action directly. We will, accordingly, dismiss Count II.

## III. THE STOCK INCENTIVE PLAN

In Counts I and II, plaintiff protests the JLG board's "golden parachutes," stock options that may be exercised when control of JLG changes hands. Defendants counter that plaintiff's complaint does not articulate a "case or controversy" as required by Article III of the Constitution because the matter is not ripe. We need not address this argument. We have dismissed those portions of Count I that deal with the "golden parachutes" and all of Count II, thus rendering further discussion of the stock incentive plan moot.

## IV. BREACH OF FIDUCIARY DUTIES

▪ What remains of Count I is predicated on a theory that the JLG directors breached their fiduciary duty to the corporation. Defendants argue that, as a matter of law, the directors did not breach their fiduciary duties.

The 1990 amendments to the BCL explicitly grant broad discretion to boards of directors.

> . . . the fiduciary duty of directors shall not be deemed to require them:
>
> > (3) to act as the board of directors, a committee of the board or an individual director solely because of the effect such action might have on an acquisition or potential or proposed acquisition of control of the corporation or the consideration that might be offered or paid to shareholders in such an acquisition.

---

**3.** Indeed, the *Wolf* court opined that "[w]here the shareholder cannot show any direct injury, personal to himself, and apart from injury to the corporation, he cannot sue in his own right." *Id.* at 409.

15 Pa.Cons.Stat. § 1715(c)(3). The Draftsmen's Comments to § 1715 note that

> It is intended, therefore, that the directors' business conclusions with respect to the actions covered by the subsection would ordinarily not be subject to review. In particular, under this subsection, directors have the statutory authority to "just say no" with respect to a potential or proposed acquisition of the corporation's shares ...

Indeed, critics have charged that the BCL grants directors virtual carte blanche.

> Furthermore, when an attempt to gain control is involved, any action to which a majority of the directors has assented is presumed to comply with their fiduciary duty, unless there exists clear and convincing evidence that the directors did not act in good faith, after a reasonable investigation.... In addition, shareholders will never be heard to complain that they lost valuable consideration when a takeover is thwarted, unless they can point to some other breach of fiduciary duty.

Marshall, *supra*, at 582–83. We are aware that the amended portions of the Pennsylvania BCL are judicially uncharted territory. We agree with the commentators and construe the statute to give broad authority to directors to act as they see fit in the face of attempted takeovers.[4]

Plaintiff's allegations can be simply stated: The JLG board of directors did not properly pursue the offer of the group represented by attorney Orbe, nor has it been amenable to other offers. We believe the 1990 amendments to the BCL would not denominate the actions of the JLG board as a breach of fiduciary duty. In considering a motion under Fed.R.Civ.P. 12(b)(6), we must accept as true all the well-pleaded allegations of the complaint and construe them favorably to the plaintiff. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). In the instant case, plaintiff's complaint, viewed in the light of the 1990 amendments to the BCL, fails to state a cause of action.

We will, accordingly, dismiss the remaining portions of Count I.

## V. TORTIOUS INTERFERENCE

■ Count III is a class action suit against the directors of JLG alleging interference with contract and prospective advantage.

Apparently, plaintiff contends that the JLG director's alleged refusal to deal with Orbe or other prospective buyers has tortiously interfered with its rights to the potential Orbe contract to purchase its shares.

■ Both interference with contract and interference with prospective advantage (which is the equivalent of interference with prospective contractual relations) are intentional torts. Restatement (Second) of Torts § 766 (1977); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979). Intent is an element of both causes of action. *Thompson Coal, supra*, 412 A.2d at 470–71; *Silver v. Mendel*, 894 F.2d 598, 601–02 (3d Cir.1990). Defendants argue that the complaint fails to aver the requisite intent. Plaintiff counters that the directors' refusal to speak with Orbe, coupled with the possibility of harm to plaintiff, demonstrates the intent required under Pennsylvania law. We disagree. For most torts, including the two we consider here, intent is not merely an intent to do a certain act but an intent to bring about a particular result. *Barber v. Pittsburgh Corning Corp.*, 365 Pa.Super. 247, 261, 529 A.2d 491, 499 (1987). Intent can also be inferred where the result is *substantially certain* to occur. *Id.* The complaint fails

---

**4.** The legislative history strengthens our conclusion.

> [This act] sets new ground rules for the 90s, providing Pennsylvania boardrooms with the breathing room necessary to direct their attention to product development and research and global competition rather than fending off takeovers and paying greenmail.

Remarks of Sen. Wenger, Legislative Journal—Senate, Pennsylvania General Assembly 1947 (April 23, 1990). Plaintiff's argument includes references to several Delaware cases that deal with fiduciary duty. There is evidence that the draftsmen of the 1990 amendments sought specifically to avoid the Delaware construction. *See* Zeiter, *supra*.

to allege that defendants had either an intent to harm plaintiff or a substantial certainty that plaintiff would suffer harm. This will be fatal to Count III. Additionally, the claim for interference with contract is insufficient because it does not allege a critical element of the tort: a current contractual relationship between plaintiff and a "third party," in this case, the group represented by Orbe. *See Daniel Adams Associates v. Rimbach Pub.*, 360 Pa.Super. 72, 78, 519 A.2d 997, 1000 (1987).

## VI. CONCLUSION

We believe that, as a matter of law, the complaint fails to state a claim for breach of fiduciary duty under the revised Pennsylvania BCL and that dismissal of Counts I and II is therefore warranted. Further, the complaint does not state a cause of action for tortious interference with contract or prospective contractual relations.